MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
JAN T. CHILTON (State Bar No. 47582)
jtc@severson.com
JOSHUA E. WHITEHAIR (State Bar No. 244900)
jew@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
Bank of America, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KECK, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, a Delaware Corporation; CENTRAL STATES INDEMNITY CO. OF OMAHA, a Nebraska Corporation; CSI PROCESSING, LLC, a Nebraska Company, and DOES 1 through 100,<br><br>Defendants. | Case No.: CV 08-1219 CRB<br><br>**BANK OF AMERICA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 18, 2008<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. Charles R. Breyer<br><br>Complaint Date: December 17, 2007<br>Trial Date: Not Set |

# TABLE OF CONTENTS


Page

NOTICE OF MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 3

I. SUMMARY OF ARGUMENT ..... 3

II. STATEMENT OF ISSUES TO BE DECIDED ..... 4

III. THE COMPLAINT'S PERTINENT ALLEGATIONS ..... 5

IV. THE COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT TO STATE PLAUSIBLE CLAIMS ..... 5

A. To Survive A Motion To Dismiss A Complaint Must Plead Facts ..... 5

B. Keck Does Not Allege Facts Showing A UCL Violation ..... 7

C. Keck Does Not Allege Facts Showing A Violation Of Penal Code Section 632 ..... 8

D. Keck Does Not Allege Facts Establishing A CLRA Violation ..... 9

1. The CLRA Does Not Apply To Credit Or Insurance Transactions ..... 9

2. The CLRA Does Not Apply To Business Services ..... 13

3. Keck Does Not Allege Facts Showing A CLRA Violation ..... 15

E. There Is No Separate Claim For Elder Abuse ..... 16

F. Keck Alleges No Unjust Enrichment Claim ..... 18

V. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

*Cases*


*American Realty Trust, Inc. v. Travelers Cas. & Sur. Co.*, 362 F.Supp.2d 744 (N.D. Tex. 2005) .......... 7

*ARA Living Centers-Pacific, Inc. v. Superior Court*, 18 Cal.App.4th 1556, 23 Cal.Rptr.2d 224 (1993) .......... 4, 17

*Augustine v. FIA Card Services, N.A.*, 485 F.Supp.2d 1172 (E.D. Cal. 2007) .......... 4

*Bacon ex rel. Moroney v. American Intern. Group*, 415 F.Supp.2d 1027 (N.D. Cal. 2006) .......... 9, 13

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 6

*Bell Atlantic Co. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007) .......... 3, 6, 15, 16

*Berkley v. Dowds,* 152 Cal.App.4th 518, 61 Cal.Rptr.3d 304 (2007) .......... 4, 17

*Berry v. American Express Pub., Inc.*, 147 Cal.App.4th 224, 54 Cal.Rptr.3d 91 (2007) .......... 4, 9-13

*California Grocers Assn., Inc. v. Bank of America*, 22 Cal.App.4th 205, 27 Cal. Rptr.2d 396 (1993) .......... 14

*Civil Service Employees Ins. Co. v. Superior Court*, 22 Cal.3d 362, 584 P.2d 497 (1978) .......... 9, 13

*Corbett v. Hayward Dodge, Inc.*, 119 Cal.App.4th 915, 14 Cal.Rptr.3d 741 (2004) .......... 12

*Deerman v. Federal Home Loan Mortg. Corp.*, 955 F.Supp. 1393 (N.D. Ala. 1997) .......... 12

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1966) .......... 6

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F.Supp.2d 1095 (C.D. Cal. 2006) .......... 9, 13

*Faigman v. AT & T Mobility LLC,* 2007 WL 2088561 (N.D. Cal. 2007) .......... 7

*Falk v. General Motors Corp.*, 496 F.Supp.2d 1088 (N.D. Cal. 2007) .......... 18

*Flatley v. Mauro*, 39 Cal.4th 299, 46 Cal.Rptr.3d 606 (2006) .......... 12

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006) .......... 10

*Genton v. Vestin Realty Mortg. II, Inc.*, 2007 WL 951838 (S.D. Cal. 2007) .......... 17

*Ghirardo v. Antonioli*, 14 Cal.4th 39, 924 P.2d 996 (1996) .......... 18

*Haeger v. Johnson*, 25 Or.App. 131, 548 P.2d 532 (1976) .......... 12

# TABLE OF AUTHORITIES

Page(s)

*Cases*


*Hartless v. Clorox Co.*, 2007 WL 3245260 (S.D. Cal. 2007) .......... 7

*Hernandez v. Hilltop Fin. Mortg., Inc.*, 2007 WL 3101250 (N.D. Cal. 2007).......... 11, 12

*Hitz v. First Interstate Bank,* 38 Cal.App.4th 274, 44 Cal.Rptr.2d 890 (1995) .......... 13

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir.2003) .......... 5

*In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir.1994) .......... 6

*Jefferson v. Chase Home Fin. LLC*, 2007 WL 1302984 (N.D. Cal. 2007) .......... 11

*Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal.3d 582, 200 Cal.Rptr.38 (1984) .......... 12

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 137 P.3d 914 (2006) .......... 8

*Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 WL 2300746 (S.D. Cal. 2007).......... 7

*Knox v. Ameriquest Mortg. Co.*, 2005 WL 1910927 (N.D. Cal. 2005).......... 11

*Lamm v. AMFAC Mortgage Corp.*, 44 Or.App. 203, 605 P.2d 730b (1980).......... 12

*Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal.App.4th 1439, 9 Cal.Rptr.2d 774 (1992).......... 18

*Lopez v. GMAC Mortg. Corp.*, 2007 WL 3232448 (N.D. Cal. 2007) .......... 7

*Maginn v. Northwest Mortgage Inc.*, 919 S.W.2d 164 (Tex. Ct. App. 1996).......... 10

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 131 Cal. Rptr.2d 347 (2003) .......... 18

*Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 44 Cal.3d 287, 250 Cal. Rptr. 116 (1988) .......... 17

*Morris v. BMW of N. Am., LLC*, 2007 WL 3342612 (N.D. Cal. 2007).......... 3, 6-8, 15

*Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 27 Cal.Rptr.3d 797 (2005) .......... 16

*Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847 (N.D. Ill. 2006) .......... 7

*Negrete v. Fid. & Guar. Life Ins. Co.*, 444 F.Supp.2d 998 (C.D. Cal. 2006). .......... 17

*Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082 (N.D. Cal. 1006) .......... 7

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003).......... 6

*Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980).......... 12

*Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993 (9th Cir. 2007).......... 12, 17

*Shirk v. Vista Unified School Dist.*, 42 Cal.4th 201, 64 Cal.Rptr.3d 210 (2007) .......... 10

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*State v. First Nat'l Bank*, 660 P.2d 402 (Alaska 1982) .......... 13

*Stickrath v. Globalstar, Inc.*, 527 F.Supp.2d 992 (N.D. Cal. 2007) .......... 7

*24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 78 Cal.Rptr.2d 533 (1998) .......... 16

*Van Slyke v. Capital One Bank*, 2007 WL 1655641 (N.D. Cal. 2007) .......... 4, 11

*Varney v. R.J. Reynolds Tobacco Co.*, 118 F.Supp.2d 63 (D.Mass.2000) .......... 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir.2003) .......... 7

*Vikco Ins. Serv., Inc. v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 82 Cal.Rptr.2d 442 (1999) .......... 17

*Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285 (S.D. Cal. 2003) .......... 14

*Waite v. BancTexas-Houston, N.A.*, 792 S.W.2d 538 (Tex. Ct. App. 1990) .......... 12

*Washington v. Baezinger*, 673 F.Supp. 1478 (N.D. Cal. 1987) .......... 6

*Wolk v. Green*, 516 F.Supp.2d 1121 (N.D. Cal. 2007) .......... 17

*Statutes*

United States Code
Title 15, section 6102 .......... 8

Code of Federal Regulations
Title 12, section 37.1 .......... 13
Title 16, section 310.3 .......... 8
Title 16, section 310.4 .......... 8

Federal Rule of Civil Procedure
Rule 8 .......... 6
Rule 9 .......... 6-8
Rule 12 .......... 1, 5, 6
Rule 81 .......... 7

California Business and Professions Code
Section 17200 .......... 3
Section 17500 .......... 7

California Civil Code
Section 1750 .......... 1, 3
Section 1761 .......... 4, 10, 14
Section 1770 .......... 10, 11, 14-16
Section 1780 .......... 15

California Penal Code
Section 632 .......... 3, 8, 9

# TABLE OF AUTHORITIES

*Page(s)*

*Statutes*

California Welfare and Institutions Code
Section 15600 .......... 1, 3
Section 15610.30 .......... 17
Section 15657 .......... 17
Section 15657.5 .......... 17

**NOTICE OF MOTION TO DISMISS**

Please take notice that on April 18, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 8 of the above-entitled court at 450 Golden Gate, San Francisco, California before the Honorable Charles R. Breyer, defendant Bank of America, N.A. ("BofA") will, and it hereby does, move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss:

1. Plaintiff's entire first amended complaint on the ground that it does not allege sufficient facts to state a plausible claim against BofA.

2. Plaintiff's third cause of action on the grounds that

a. The California Consumers Legal Remedies Act ("CLRA"; Civ. Code, §1750 et seq.) does not apply to transactions, such as those alleged in the complaint, involving only the extension of credit;

b. The CLRA does not apply to services provided for or in connection with a business credit card for business use; and

c. Plaintiff has not alleged facts showing a violation of the CLRA's specific prohibitions.

3. Plaintiff's fourth cause of action on the ground that the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, §15600 et seq.) does not create an independent private right of action.

4. Plaintiff's fifth cause of action on the ground it fails to allege any basis for an award of restitution and there is no separate cause of action for unjust enrichment.

Defendant brings this motion pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds stated above. The motion is based on this notice, the accompanying memorandum of points and authorities, the first amended complaint, and all other records and papers on file in this action.

DATED: March 6, 2008

SEVERSON & WERSON
A Professional Corporation

By: /s/ Jan T. Chilton
Jan T. Chilton

Attorneys for Defendant
Bank of America, N.A.

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## SUMMARY OF ARGUMENT

David Keck claims that a telemarketer purportedly acting on behalf of defendant Bank of America, N.A. ("BofA") called him, and after a brief, somewhat muddled conversation, enrolled him for a debt cancellation service attached to Keck's business credit card. Keck contends he never intended to, and never did, agree to subscribe to this service. He disputes the $334.58 in fees he was charged for this service.[1]

Attempting to raise an Everest from this molehill of a dispute, Keck claims to represent a class of tens of thousands of others whom he thinks BofA has mistreated in the same manner. And rather than just ask for his money back, Keck tries to allege five different causes of action for (1) violation of California's Unfair Competition Law ("UCL"; Bus. & Prof. Code, §17200 et seq.), (2) illicit recording of confidential communications in violation of California Penal Code section 632, (3) violation of California's Consumers Legal Remedies Act ("CLRA"; Civ. Code, §1750 et seq.), (4) elder abuse in violation of Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"; Welf. & Inst. Code, §15600 et seq.), and (5) unjust enrichment.

All of these claims should be dismissed. Post-*Twombly* it is no longer sufficient to allege labels, epithets and legal conclusions. To survive a motion to dismiss, a complaint must allege facts sufficient to state a claim plausible on its face. *Bell Atlantic Co. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007) ("*Twombly*"). To properly allege UCL and CLRA claims, even greater specificity is required. *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612 at *3 (N.D. Cal. 2007). Keck's complaint fails to meet these pleading standards. Apart from quoting the muddled telemarketing call, the complaint alleges only conclusions, not any facts. The call transcript alone does not establish the necessary facts to make Keck's various theories plausible.

---

1 The first amended complaint carefully omits alleging that on December 11, 2007, in response to Keck's telephonic and written complaints, BofA refunded the entire $334.58, recrediting that sum to his account.

Keck's third cause of action for violation of the CLRA should also be dismissed because the CLRA does not apply to pure credit transactions, such as the cancellation of debt on a credit card, and because the CLRA does not apply to business services.[2] Also, Keck fails to allege facts showing a violation of any of the CLRA's specific prohibitions.

The fourth cause of action should also be dismissed because the Elder Abuse Act does not create any new or independent private cause of action but only permits a court to award enhanced remedies for pre-existing statutory or common law claims upon proof of elder abuse.[3] The fifth cause of action should likewise be dismissed as unjust enrichment is not a separate cause of action and it fails to allege any basis on which restitution may be awarded.

For each of these reasons, Keck's first amended complaint should be dismissed.

## II.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should the Court dismiss the first amended complaint because it alleges insufficient facts to make its claims plausible?

2. Should the Court dismiss the third cause of action because the CLRA does not apply to a credit and/or to business services or because Keck has not alleged conduct violating the CLRA's specific prohibitions?

3. Should the Court dismiss the fourth cause of action on the ground that the Elder Abuse Act does not create an independent private right of action?

4. Should the Court dismiss the fifth cause of action on the ground that unjust enrichment is not a separate cause of action and plaintiff has alleged no basis on which restitution could be awarded?

---

2 *Berry v. American Express Pub., Inc.*, 147 Cal.App.4th 224, 233, 54 Cal.Rptr.3d 91 (2007); *Van Slyke v. Capital One Bank*, 2007 WL 1655641 at *3-4 (N.D. Cal. 2007) (CLRA does not apply to credit cards); *Augustine v. FIA Card Services, N.A.*, 485 F.Supp.2d 1172, 1174-1175 (E.D. Cal. 2007) (same); Civ. Code, §1761(b).

3 *Berkley v. Dowds*, 152 Cal.App.4th 518, 529, 61 Cal.Rptr.3d 304 (2007); *ARA Living Centers-Pacific, Inc. v. Superior Court*, 18 Cal.App.4th 1556, 1563-64, 23 Cal.Rptr.2d 224 (1993).

## III.

## THE COMPLAINT'S PERTINENT ALLEGATIONS

Keck is a 68-year-old San Francisco resident.[4] (1st Amended Compl., ¶¶9, 10.) He was "guarantor" of a BofA business credit card account, which he says he used to borrow money for personal and household purposes. (*Id.*, ¶¶11, 13.)

In July 2007, a telemarketer called him to solicit him to enroll for a debt cancellation service connected with the business credit card. (*Id.*, ¶13.) Paragraph 13 of the first amended complaint purports to recite a verbatim transcript of the telephone call. During the call, the telemarketer asked if it was okay with Keck if he taped the "confirmation of your coverage and enrollment." Keck responded: "Yes." (1st Amended Compl., ¶13.)

Beginning on August 13, 2007, BofA began charging Keck for the debt cancellation service. Over the course of the next three months, the charges totaled $334.58. (*Id.*, ¶¶14, 15.) Keck noticed the charges on October 12 and immediately complained about them. When he complained to BofA, it directed him to co-defendant CSI Processing. When he complained to CSI Processing, it sent him back to BofA. (*Id.*, ¶16.)

CSI Processing sent Keck a letter in November 2007 with a recording of the July telephone conversation as confirmation of his enrollment. (*Id.*, ¶17.) The letter was on BofA letterhead, but signed by CSI. (*Id.*)

Based on these sparse factual allegations, Keck asserts the five previously mentioned causes of action, adding no further factual detail to his claim.

## IV.

## THE COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT TO STATE PLAUSIBLE CLAIMS

### A. To Survive A Motion To Dismiss A Complaint Must Plead Facts

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claim(s) stated in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir.2003). "Dismissal can be

---

[4] As a motion to dismiss tests only the legal sufficiency of the complaint's allegations, BofA states those allegations without comment now as to their truth or falsity and without waiving its right to contest their truth later.

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss ... under Rule 12(b)(6), a complaint generally must at least satisfy Rule 8(a)(2)'s requirement that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).

Last year, the Supreme Court tightened pleading standards under Rule 8(a)(2). The Supreme Court now requires a plaintiff to proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S.Ct. at 1974. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citation omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1966).

A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Twombly*, at 1968 (citation omitted). Consequently, a Rule 12(b)(6) motion should be granted where the plaintiffs have failed to "nudge[ ] their claims across the line from conceivable to plausible." *Id.*

Allegations of fraud must meet the heightened pleading standards of Rule 9(b), which requires allegation of "particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading." *Morris*, 2007 WL 3342612 at *3, citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n. 7 (9th Cir.1994) (en banc). Fraud by omission may be alleged without detailed allegation of time, place and contents, but the plaintiff must still allege that there was a fraud by stating facts imposing a duty of disclosure as well as the defendant's knowledge of falsity. *Morris,* 2007 WL 3342612 at *5-6; *Washington v. Baezinger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987).

Rule 9(b) applies to statutory claims based on misrepresentation though the statute eliminates some traditional elements of fraud, such as reliance.[5] Even when fraud is not an essential element of a claim, Rule 9(b)'s particularity requirement applies to any averments of fraud. Where a plaintiff alleges a uniform course of fraudulent conduct and relies on that conduct as the basis of a claim, the claim "sounds in fraud" and the plaintiff must plead the whole claim with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.2003).

These pleading standards apply to a complaint in a case that was initially filed in state court, but has been properly removed to federal court.[6]

**B. Keck Does Not Allege Facts Showing A UCL Violation**

Keck's first cause of action attempts to allege a claim under the UCL and California's false advertising law, Bus. & Prof. Code, §17500, which, in Keck's words bans "unfair, deceptive, untrue, or misleading advertising." (1st Amended Compl., ¶31.) However, the six paragraphs of the purported cause of action (*id.*, ¶¶31-36) allege only conclusions, not any facts.

The cause of action does not expressly incorporate allegations from other portions of the complaint. Even assuming Keck meant to incorporate his "factual allegations" (*id.*, ¶¶9-23) in this claim, he has still failed to allege sufficient facts to make the claim plausible, let alone meet Rule 9(b)'s heightened pleading requirements.

Insofar as Keck bases his UCL claim on "unlawful" business practices, his complaint fails to allege the violation of any other law. As explained below, he does not properly aver a viola-

5 *See, e.g., Morris,* 2007 WL 3342612 at *5 (Rule 9(b) applies to a claim of fraudulent business practices violating the UCL); *Hartless v. Clorox Co.*, 2007 WL 3245260 at *6, 8 (S.D. Cal. 2007) (Rule 9(b) applies to a claim of fraudulent business practices violating the UCL and the CLRA); *Stickrath v. Globalstar, Inc.*, 527 F.Supp.2d 992, 998 (N.D. Cal. 2007) (same); *Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 WL 2300746 at *5-6 (S.D. Cal. 2007) (same); *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 860 (N.D. Ill. 2006) (CLRA claim is subject to Rule 9(b) requirements); *but see Faigman v. AT & T Mobility LLC,* 2007 WL 2088561 at *4 (N.D. Cal. 2007) (Rule 9(b) "not strictly applicable to a CLRA claim, [but] plaintiffs [are] 'still required to provide some specificity in their pleadings to put defendants on notice of the charges leveled against them.' "); *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1097-99 (N.D. Cal. 1006) (same).

6 *Lopez v. GMAC Mortg. Corp.*, 2007 WL 3232448 at *4 (N.D. Cal. 2007); *American Realty Trust, Inc. v. Travelers Cas. & Sur. Co.*, 362 F.Supp.2d 744, 748 (N.D. Tex. 2005); *Varney v. R.J. Reynolds Tobacco Co.*, 118 F.Supp.2d 63, 67-68 (D. Mass.2000); F.R.Civ.P. 81(c).

tion of the Penal Code section 632, the CLRA, or the Elder Abuse Act. The only other statute mentioned in the complaint is 15 U.S.C. §6102. (1st Amended Compl., ¶19.) Contrary to the complaint's allegation, section 6102 does not itself prohibit deceptive or abusive telemarketing techniques, but instead directs the FTC to adopt regulations banning those techniques. Even if Keck's complaint could be read liberally to reference the implementing regulations, it fails to aver facts or explain how the short telephone call averred in paragraph 13 violated any of the detailed proscriptions of 16 C.F.R. §§310.3 or 310.4.

Keck's complaint is equally inadequate in averring an "unfair" business practice. The pleading does not tether the claim to any specific legislative policy. *See Morris*, 2007 WL 3342612 at *8. The cause of action does not identify a particular practice that Keck deems unfair, nor does it aver what harm the practice supposedly causes or the absence of any offsetting benefit.

Insofar as the claim is based on fraudulent business practices or false advertising and is thus subject to Rule 9(b) pleading requirements, it fails even more dismally. It does not identify any false or misleading statement. It does not aver any omission. It does not show how a reasonable member of the public would likely be deceived by whatever Keck claims to be the improper practice or advertising. A plaintiff does not satisfy Rule 9(b) by alleging an entire conversation verbatim and then stating the conclusion that the other party committed fraud. Instead, the complaint must identify the particular part of the alleged conversation, the specific statement or omission, claimed to be false or deceptive, not leave the Court and defendant guessing about that critical fact. Keck's complaint fails to do so and hence does not properly allege a violation of the UCL or the false advertising law.

### C. Keck Does Not Allege Facts Showing A Violation Of Penal Code Section 632

California Penal Code section 632(a) forbids the secret or surreptitious recording of a confidential telephone call by one party to the call without the other party's consent. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 117-18, 137 P.3d 914 (2006).

Keck's second cause of action attempts, but fails, to allege facts showing a violation of section 632. In the first place, Keck does not allege facts showing the telephone call was confidential. In the second place, he fails to aver facts showing he did not consent to the telemar-

keter's recording it. The complaint avers only conclusions, not facts, on both points. (*See* 1st Amended Compl., ¶¶39, 40.)

The few specific facts that the complaint does allege affirmatively establish the contrary is true: Keck did consent to the telemarketer's recording their conversation:

> TELEMARKETER: Great. Now to complete your enrollment, sir, with your permission, for quality assurance purposes, I'd like to tape record the confirmation of your coverage and enrollment, is that okay?
>
> KECK: Yes.

(1st Amended Compl., ¶13.)

This exchange did occur after three other questions and answers had been recorded. But nothing in section 632 states that consent may only be given before recording begins. Post hoc consent is still consent, and it still obviates any notion that the conversation was "confidential"—that is, carried out "in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." (Pen. Code, §632(c).)

**D. Keck Does Not Allege Facts Establishing A CLRA Violation**

Keck's third cause of action attempts to aver a CLRA violation but falls short of that goal. It does not allege facts showing that the transaction fell within the CLRA's coverage or that any of the CLRA's specific prohibitions were violated.

**1. The CLRA Does Not Apply To Credit Or Insurance Transactions**

"[N]either the express text of CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act." *Berry,* 147 Cal.App.4th at 233. "[I]nsurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA] …."[7]

---

7 *Civil Service Employees Ins. Co. v. Superior Court*, 22 Cal.3d 362, 376, 584 P.2d 497 (1978) (dictum); *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F.Supp.2d 1095, 1108 (C.D. Cal. 2006); *Bacon ex rel. Moroney v. American Intern. Group*, 415 F.Supp.2d 1027, 1035-36 (N.D. Cal. 2006). The issue of whether the CLRA applies to insurance is now pending before the California Supreme Court in *Fairbanks v. Superior Court*, No. S157001.

The CLRA's scope is discerned first from its statutory text.[8] The CLRA's central provision, Civ. Code, §1770, bans various specified practices only if "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Thus, section 1770 and the rest of the CLRA's provisions apply only if the transaction involves the sale or lease of "goods" or "services." Neither credit nor insurance is a good[9] or a service[10] as the CLRA defines those terms; hence, the CLRA does not apply to credit transactions.

The CLRA's legislative history confirms the fact that the act does not apply to extensions of credit.

> Early drafts of section 1761, subdivision (d), defined "Consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, *money*, or *credit* for personal, family or household purposes." (Assem. Bill No. 292 (1970 Reg. Sess.) Jan. 21, 1970, italics added.) But the Legislature removed the references to "money" and "credit," before CLRA's enactment, and they do not appear in the current version.

*Berry*, 147 Cal.App.4th at 230.

By deleting "money" and "credit" from the CLRA's definitional sections, the Legislature evidenced its intent to exclude loans from the act's coverage. "[T]he Legislature's deletion of the terms 'money' and 'credit' from CLRA's definition of 'consumer' strongly counsels us not to stretch the provision to include extensions of credit unrelated to the purchase of any specific good or service." *Id.* at 231. "[C]ourts must not interpret a statute to include terms the Legislature deleted from earlier drafts." *Id.*

---

8 *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006) ("The starting point for [the] interpretation of a statute is always its language."); *Shirk v. Vista Unified School Dist.*, 42 Cal.4th 201, 211, 64 Cal.Rptr.3d 210 (2007) ("We begin with the statutory language because it is generally the most reliable indication of legislative intent.")

9 The CLRA defines "goods" to mean "tangible chattels." Civ. Code, §1761(a). "The extension of credit [such as a loan] is not a tangible chattel." *Berry,* 147 Cal.App.4th at 229. Nor is insurance.

10 The CLRA defines "services" to mean "work, labor, and services for other than a commercial or business use." Civ. Code, §1761(b). Credit is not a "service" within the CLRA's definition. A loan involves no work or labor or any other "service," but only the use of the lender's money. Incidental services that serve only to facilitate the extension of credit do not bring an otherwise non-covered transaction within the CLRA's scope. *See Maginn v. Northwest Mortgage Inc.*, 919 S.W.2d 164, 167 (Tex. Ct. App. 1996).

Other changes made during the Legislature's consideration of the CLRA's early drafts confirm that deletion of the terms "money" and "credit" was intended to narrow the act's scope.

> For example, an early draft of section 1780 gave standing to "[a]ny consumer who *obtains credit*, or purchases or leases, or agrees to purchase or lease, goods or services primarily for personal, family, or household purposes, and who thereby suffers any damage...." (Italics added.) The draft's placement of the phrase "obtains credit" demonstrates the Legislature viewed the extension of credit as a separate activity from purchasing or leasing goods and services, rather than an example of it. The final version of section 1780 deleted the specific references to activities covered under the act, and it now confers standing on: "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770...."

*Id.*, at 232.

As *Berry* points out, §1770 also evidences the Legislature's intent that the CLRA not extend to credit transactions. "Most of the matters in section 1770 appear directed toward the purchase and lease of tangible goods and services, and none suggests the statutory language covered extensions of credit unrelated to a specific sale or lease transaction." *Id.* Moreover, the section's above-quoted introductory phrase, limiting the section's prohibitions to practices undertaken in connection with the sale or lease of goods or services, is considerably narrower in scope than the section's initial draft, which would have banned the specified practices if "undertaken by any person in the conduct of any trade or commerce ...." *Id.*

Other recent state and federal decisions adopt *Berry's* careful analysis of the CLRA's text and legislative history as well as its conclusion that the act does not apply to credit transactions.[11]

Three recent decisions by judges of this Court have bucked this trend, holding that home mortgage loans or services rendered in connection with them are covered by the CLRA.[12] These decisions should not be followed because they fail to accord appropriate respect to *Berry*.

---

11 *Van Slyke*, 2007 WL 1655641 at *3-4 (CLRA does not apply to credit cards); *Augustine*, 485 F.Supp.2d at 1174-75 (same).

12 *Jefferson v. Chase Home Fin. LLC*, 2007 WL 1302984 at *3 (N.D. Cal. 2007) (Henderson, J.); *Hernandez v. Hilltop Fin. Mortg., Inc.*, 2007 WL 3101250 at *5-6 (N.D. Cal. 2007) (Illston, J.); *Knox v. Ameriquest Mortg. Co.*, 2005 WL 1910927 at *4 (N.D. Cal. 2005) (Conti, J.).

As the Ninth Circuit has recently reiterated:

> [W]hen (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.

*Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (internal quotation marks & citation omitted).

There is no "convincing evidence" that the California Supreme Court would "decide differently" from and disapprove *Berry*. As *Hernandez,* acknowledges, neither of the two California cases it cites as evidence *Berry* is wrong, in fact, decided whether the CLRA applied to credit transactions.[13] "A decision, of course, does not stand for a proposition not considered by the court."[14] Such a decision cannot be "convincing evidence" of how the court will rule when it does consider the issue. None of the federal decisions disagreeing with *Berry* cite any other "convincing evidence" that the California Supreme Court will decide the issue of the CLRA's scope differently. Moreover, *Berry* is consistent with decisions interpreting other states' statutes that are similar to the CLRA.[15]

---

13 "[T]he courts in *Kagan* and *Corbett* did not specifically discuss whether the financial transaction at issue fell under the CLRA's definition of a 'good' or 'service' …." *Hernandez,* 2007 WL 3101250 at *5. In *Kagan*, the issue before the California Supreme Court was, as that court phrased it: "May a consumer who notifies a prospective defendant of class grievances under the Consumer Legal Remedies Act and informally obtains individual relief, subsequently bring a class action for damages on behalf of herself and as a representative of the class against the prospective defendant?" *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal.3d 582, 586-87, 200 Cal.Rptr.38 (1984). In *Corbett*, In *Corbett*, the sole issue was whether the trial court had abused its discretion in denying the prevailing defendant attorney fees under Civil Code section 1780(d), part of the CLRA. *Corbett v. Hayward Dodge, Inc.*, 119 Cal.App.4th 915, 14 Cal. Rptr.3d 741 (2004).

14 *Flatley v. Mauro*, 39 Cal.4th 299, 320, 46 Cal.Rptr.3d 606 (2006).

15 *See, e.g., Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex.1980) [loan unconnected with any specific good or service not covered under the Texas Deceptive Trade Practices Act]; *Waite v. BancTexas-Houston, N.A.*, 792 S.W.2d 538, 541 (Tex. Ct. App. 1990) ("the lending of money is neither a good or service"); *Deerman v. Federal Home Loan Mortg. Corp.*, 955 F.Supp. 1393, 1399 (N.D. Ala. 1997) [mortgage loan not a "good" or "service" under the Alabama Deceptive Trade Practices Act]; *Lamm v. AMFAC Mortgage Corp.*, 44 Or.App. 203, 204-05, 605 P.2d 730 (1980) (deletion of "loans and extensions of credit" from the final version of bill "resolved any doubt" that Oregon's Unfair Trade Practices Act does not apply to mortgage loans); *Haeger v. Johnson*, 25 Or.App. 131, 135, 548 P.2d 532 (1976) [loan not a sale of goods or

(Fn. cont'd)

That three judges of this district have now disagreed with *Berry* is also not "convincing evidence" that the California Supreme Court will do so too. "The opinions of other federal judges on a question of state law do not constitute 'convincing evidence that the state supreme court would decide [an issue] differently' …." *Ryman*, 505 F.3d at 995 n. 1 (citation omitted).

In accordance with the rule reiterated in *Ryman*, the Court should follow *Berry, Civil Service Employees, Bacon,* and *Estate of Migliaccio*, and hold that the CLRA does not apply to credit or insurance transactions. That rule dooms Keck's third cause of action. The transaction out of which his complaint arises involved either a credit or an insurance transaction. The thing sold was debt cancellation or payment plan in the event of Keck's disability or unemployment. (1st Amended Compl., ¶14.) Keck alleges it was insurance. (*Id.*) But more likely it was a debt cancellation or suspension, as it was offered by a bank, not an insurance company. *See* 12 C.F.R. §37.1 *et seq*. It is unnecessary to decide between the two, however, since both insurance and credit fall outside the CLRA's scope.

**2. The CLRA Does Not Apply To Business Services**

The debt cancellation or suspension plan offered Keck fell outside the CLRA's scope for an additional reason as well. As the telemarketer made clear, it was offered only in connection with business credit cards.

> TELEMARKETER: … I'm calling on behalf of Bank of America regarding your Bank of America ***business credit card*** sir that you have with us. Now Mr. Keck I just want to offer a new optional service here today, it's called the ***business card security***. …
>
> * * *
>
> TELEMARKETER: … [I] just want to get the materials out to you today sir for 30 days to review in the privacy of your own ***business***. …
>
> * * *

---

(Fn. cont'd)
services under Oregon's Unlawful Trade Practices Act]; *State v. First Nat'l Bank*, 660 P.2d 402, 413 (Alaska 1982) (list of proscribed activities in statute suggests that the law is "directed solely at regulating transactions involving 'products and services sold to consumers in the popular sense'").

TELEMARKETER: I said I would also like to confirm I'm speaking with a guarantor of a ***business credit card*** with Bank of America, is that correct?

KECK: Yes, I have a – I have a credit card.

TELEMARKETER: Are you the guarantor sir on that credit Bank of America ***business credit card***?

KECK: Yes.

(1st Amended Compl., ¶13; emphasis added.)

As its name implies, the Consumers Legal Remedies Act is designed to protect consumers, not business people. The CLRA prohibits specific deceptive practices in any transaction that is intended to or does result in the sale or lease of goods or services "to any consumer." Civ. Code, §1770(a). The act further defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes," "services" as "work, labor, and services for other than a commercial or business use," and "consumer" as a person who buys or leases "any goods or services for personal, family, or household purposes." Civ. Code, §1761(a), (b), (d).

Not surprisingly, the courts have refused to apply the CLRA to transactions between business entities or for business purposes.[16] Here, Keck does not allege that he enrolled the debt cancellation or suspension plan for personal, family or household purposes.[17] Nor was the plan offered for those consumer purposes. Instead, as the telemarketer's emphasized remarks made clear, BofA offered the plan only in conjunction with a business credit card and for use in the guarantor's business. Because the plan was not offered, accepted, sold or leased for consumer purposes, the CLRA did not apply to the transaction.

---

16 *See California Grocers Assn., Inc. v. Bank of America,* 22 Cal.App.4th 205, 217, 27 Cal. Rptr.2d 396 (1993); *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1303 (S.D. Cal. 2003).

17 Keck does allege that he borrowed money on his business credit card for personal or household expenses. (1st Amended Compl., ¶11.) However, he does not allege that BofA was aware of this fact or should have been. Nor does he allege that the debt cancellation or suspension plan was offered for personal or household purposes or that he sought it for such use.

### 3. Keck Does Not Allege Facts Showing A CLRA Violation

Unlike the UCL, the CLRA does not prohibit all "unfair" acts—even in transactions to which it applies. Instead, the CLRA's key provision, Civ. Code, §1770, declares 19 specifically defined practices to be unlawful, and §1780 gives a private right of action to consumers injured by those specific prohibited practices. Keck fails to state a viable claim under the CLRA because he alleges no *facts* showing that BofA committed any of the practices forbidden by section 1770.

In conclusory fashion, paragraph 44 of the first amended complaint alleges "defendants' aforementioned conduct constitutes past and ongoing violations of the following sub-sections of the CLRA," following which the paragraph recites the acts forbidden by Civil Code section 1770(a)(2), (3), (5), (7), (13), (14) and (18). These allegations are mere "labels and conclusions" which do not meet Rule 8(a)'s requirement of a statement of the grounds on which plaintiff is entitled to relief, much less Rule 9(b) specific pleading requirement. The complaint does not allege *facts* that "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965. It does not state the "time, place, persons, statements made" or provide "an explanation of how or why such statements are false or misleading." *Morris*, 2007 WL 3342612 at *3.

For example, the complaint nowhere explains how BofA is supposed to have violated §1770(a)(2), (3), and (5) which forbid misrepresenting source or sponsorship of goods or services or affiliation or association of the seller with another organization. The telemarketer clearly identified himself as representing only BofA. (1st Amended Compl., ¶13.) He did not claim that the offered debt cancellation or suspension plan was sponsored by anyone else. The only allegations concerning any other entity assert Keck was shuffled between BofA and CSI Processing when he complained about being charged for a plan that he said he had not agreed to purchase. (1st Amended Compl., ¶¶16, 17.) Those allegations show no misrepresentation of the type condemned by §1770(a)(2), (3), or (5).

Section 1770(a)(7) bans representing that goods or services are of a particular grade, standard or quality, when they are not. Keck's complaint alleges no such misrepresentation regarding the debt cancellation or suspension plan he was offered. Likewise, the complaint alleges no mis-

representation regarding any non-existence price reduction, as required to establish a violation of §1770(a)(13).

Section 1770(a)(14) bans misrepresentations concerning the "rights, remedies or obligations" that the transaction confers or involves. Keck alleges no such misrepresentation.

Finally, the complaint mentions §1770(a)(18), but apparently means §1770(a)(19), since the latter, not the former, subsection prohibits inserting unconscionable provisions in a contract. (1st Amended Compl., ¶44(g).) The complaint does not identify any contract for the debt cancellation or suspension plan, let alone allege facts showing that any portion of the contract is procedurally or substantively unconscionable, both of which are required to establish unconscionability under California law.[18]

For each of the foregoing reasons, Keck fails to allege a CLRA claim properly. Accordingly, his third cause of action should be dismissed.

**E. There Is No Separate Claim For Elder Abuse**

Keck purports to bring his fourth cause of action under the Elder Abuse Act and alleges, in conclusory terms only, that "defendants wrongfully appropriated and retained … property [of Keck and other elders] with the intent to defraud, and/or assisted in doing the same, and thereby committed financial elder abuse, as that term is defined in [Welfare & Institutions Code] section 15610.30 …." (1st Amended Compl., ¶52.)

This conclusory allegation does not state a claim on which relief may be granted. It alleges no facts to make the claim plausible. It is merely labels and conclusions, which do not suffice under *Twombly.*

Furthermore, the allegations fail to state a claim because the Elder Abuse Act confers no independent private cause of action. The Elder Abuse Act "does not create a cause of action as such, but provides for attorney fees, costs and punitive damages under certain conditions" as

---

18 *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1317-24, 27 Cal.Rptr.3d 797 (2005); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1212-13, 78 Cal.Rptr.2d 533 (1998).

additional remedies when the plaintiff establishes another, independent tort and proves specified additional facts.[19]

The Elder Abuse Act's provisions support the just-quoted holding. Section 15610.30 of that act *defines* "financial abuse of an elder or dependent adult." Section 15657.5 of the Elder Abuse Act allows enhanced remedies—attorney fee awards and emotional distress damages in survival actions—upon proof of financial elder abuse. However, neither of these sections creates an independent cause of action for financial elder abuse.

"If the Legislature intends to create a private cause of action, we generally assume it will do so ' "directly[,] … in clear, understandable, unmistakable terms …" ' "[20] The Elder Abuse Act does not do so. Quite to the contrary, as §15657.5 shows, the Legislature considered private remedies for financial elder abuse. It chose *not* to create a new cause of action for financial elder abuse, but to allow, instead, enhanced remedies for existing causes of action when financial elder abuse was proven in addition.[21]

Like §15657, on which it was modeled, §15657.5 "did not add a cause of action" but only provided enhanced remedies as an incentive to encourage private suits under already existing causes of action.[22] Accordingly, there is no cause of action for financial elder abuse under Cali-

---

19 *Berkley,* 152 Cal.App.4th at 529; *ARA Living Centers-Pacific, Inc*, 18 Cal.App.4th at 1563-64; *Wolk v. Green*, 516 F.Supp.2d 1121, 1133 & n. 12 (N.D. Cal. 2007). A few earlier federal court decisions uphold a separate cause of action under the Elder Abuse Act. *Genton v. Vestin Realty Mortg. II, Inc.*, 2007 WL 951838 at *2 (S.D. Cal. 2007); *Negrete v. Fid. & Guar. Life Ins. Co.*, 444 F.Supp.2d 998, 1002 (C.D. Cal. 2006). However, as already explained, under the rule recently reiterated by the Ninth Circuit, this court must follow the contrary decisions of California's intermediate appellate courts absent "convincing evidence" the California Supreme Court would reject *Berkley* and *ARA Living Centers*. *Ryman,* 505 F.3d at 994-95. There is no such "convincing evidence."

20 *Vikco Ins. Serv., Inc. v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 62-63, 82 Cal.Rptr.2d 442 (1999), quoting *Moradi-Shalal v. Fireman's Fund Ins. Cos.,* 44 Cal.3d 287, 294-295, 250 Cal. Rptr. 116 (1988); citation omitted.

21 Section 15657.5(a) provides that "in addition to all other remedies otherwise provided by law," the court must award the plaintiff reasonable attorney fees and costs when "it is proven by a preponderance of the evidence that a defendant is liable for financial abuse." When the plaintiff proves financial abuse by the higher standard of clear and convincing evidence, he or she may also recover damages for emotional distress suffered by the abused elder prior to his or her death.

22 *ARA Living Centers-Pacific, Inc.,* 18 Cal. App.4th at 1563-64.

fornia law. As his complaint alleges no other claim on which to piggyback the Elder Abuse Act's enhanced remedies, Keck's fourth cause of action states no claim on which relief may be granted.

### F. Keck Alleges No Unjust Enrichment Claim

California courts are split on whether unjust enrichment can be an independent claim or merely an equitable remedy. "The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so."[23] Other California courts, however, have held that a plaintiff may state a claim for unjust enrichment, seeking restitution where other remedies are inadequate.[24]

Here, Keck has not alleged facts establishing any equities allowing restitution let alone any reason why remedies provided by the other acts he invokes are inadequate. Accordingly, he has failed to establish any occasion for resort to unjust enrichment. *See Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007). The fifth cause of action should, therefore, be dismissed.

## V.

## CONCLUSION

For the reasons stated above, Keck's complaint and each of its causes of action fail to state a claim on which relief may be granted. It should be dismissed.

DATED: March 6, 2008

SEVERSON & WERSON
A Professional Corporation

By: /s/ Jan T. Chilton
Jan T. Chilton

Attorneys for Defendant
Bank of America, N.A.

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.

---

[23] *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793, 131 Cal. Rptr.2d 347 (2003), *quoting Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774 (1992).

[24] See *Ghirardo v. Antonioli*, 14 Cal.4th 39, 50, 57, 924 P.2d 996 (1996).