1  **BRAYTON PURCELL LLP**
   ALAN R. BRAYTON (Bar No. 73685)
2  PETER B. FREDMAN (Bar No. 189097)
   CHARLOTTE E. SCOTT (Bar No. 225581)
3  222 Rush Landing Road
   Novato, CA 94948-6169
4  Telephone: (415) 898-1555
   Facsimile: (415) 898-1247
5  Email: pfredman@braytonlaw.com

6  Attorneys for Plaintiff
   DAVID KECK and all persons similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID KECK, an individual, | No. C 08-01219 CRB |
| Plaintiff, | **CLASS ACTION** |
| vs. | SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR: |
| BANK OF AMERICA, a Delaware corporation; CENTRAL STATES INDEMNITY CO. OF OMAHA, a Nebraska Corporation; CSI PROCESSING LLC, a Nebraska company; and DOES 1 through 100, | (1) UNFAIR COMPETITION (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) |
| Defendants. | (2) INVASION OF PRIVACY (Cal. Penal Code §§ 630 *et seq.*) |
| | (3) CONSUMER LEGAL REMEDIES ACT (Cal. Civil Code §§ 1750 *et seq.*) |
| | (4) FINANCIAL ELDER ABUSE (Cal. Wel. & Inst. Code §§ 15600 *et seq.*) |
| | (5) UNJUST ENRICHMENT |
| | – JURY TRIAL DEMANDED – |

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
415-898-1555

Plaintiff brings this suit on behalf of himself and all others similarly situated, and makes the following allegations on information and belief, except as to allegations specifically pertaining to plaintiff, which are based on his personal knowledge:

## INTRODUCTION

1. This case involves defendants' telemarketing of an insurance or insurance-like financial product to Bank of America credit card customers.

2. The subject product is referred to herein as "Payment Protection". In exchange for a monthly fee based on a percentage of the outstanding credit card account balance, the Payment Protection temporarily pays (or cancels) the minimum monthly payment due on the account in the event the guarantor of the account becomes unable to do so because of disability, involuntary unemployment, or the like. Thus Payment Protection secures the credit card issuer's money and the credit card guarantor's credit score.

3. Plaintiff brings this class action to stop and redress unlawful, unfair, fraudulent, and abusive practices involving the telemarketing of the Payment Protection to Bank of America credit card customers, and the targeting of elderly credit card customers for these telemarketing efforts in particular.

## THE PARTIES

4. Plaintiff DAVID KECK, an individual, is and was at all relevant times a resident of the City and County of San Francisco. His date of birth is December 25, 1938.

5. Defendant BANK OF AMERICA CORPORATION (BOA) is a Delaware corporation and doing business at all relevant in the City and County of San Francisco.

6. Defendant CENTRAL STATES INDEMNITY CO. OF OMAHA (CSI) is a Nebraska corporation registered to do business as an insurer in California and doing business at all relevant times in the City and County of San Francisco.

7. Defendant CSI PROCESSING, LLC (CSI PROCESSING) is a Nebraska corporation registered to do business in California and doing business at all relevant times in the

1  City and County of San Francisco.

2      8.    The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of defendants DOES 1 through 100 are unknown to plaintiff at this time. Plaintiff therefore sues said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiff will amend this complaint accordingly. Plaintiff is informed and believes, and on that basis alleges, that each defendant designated herein, including each DOE, is responsible, willfully, negligently, or in some other actionable manner, for the events and happenings, and violations of California law, hereinafter alleged, and that they caused plaintiff and the plaintiff classes harm thereby.

    9.    Plaintiff alleges that the matters alleged herein constitute the formation and operation of a conspiracy between and among the defendants; that each defendant committed at least one wrongful act in the furtherance of the conspiracy; that each defendant acted for personal gain or in furtherance of said defendant's own financial advantage, that the conspiracy could not have been accomplished but for the active participation and complicity of each of the defendants, and that each of the defendants is thus liable for the resulting damages to the plaintiff and persons similarly situated. Plaintiff alleges on information and belief that at all times relevant hereto each of the defendants was the agent, servant, employee, joint-venturer, partner, successor-in-interest, and/or co-conspirator of each other defendant and was at all said times acting in the full course and scope of said agency, service, employment, joint venture, concert of action, partnership, successorship, or conspiracy.

## JURISDICTION AND VENUE

    10.    This case was originally filed on January 23, 2008 in the San Francisco Superior Court. Defendants removed this case to Federal Court pursuant to the provisions of 28 U.S.C. Section 1332(d) *et seq* (the Class Action Fairness Act).

    11.    Venue is proper in this Court because defendants' liability to plaintiff arose within the jurisdictional regions of this Court as the transaction that is the subject of this action occurred via telephone call to plaintiff's home in the City and County of San Francisco.

**BACKGROUND FACTS**

12. CSI is a California admitted insurance company that touts itself as a "leading provider of Payment Protection Programs to some of the most highly respected financial institutions across the country". www.csi-omaha.com. Its self-description of its business and services are incorporated herein as follows:

> CSI specializes in payment protection programs designed to help consumers with their monthly bills. The plans of insurance we offer are made available on a group basis to customers of participating credit card issuers, whom we call our "clients." Payment Protection Plans are customized to suit our clients' preferences or requirements.
>
> CSI welcomes the opportunity to provide prospective clients with a detailed sales proposals for Credit Card plans that would specifically address client business needs and program earnings potential. Please contact us today if you're interested in building a partnership with us.
>
> CSI has over 25 years of experience in offering comprehensive payment protection plans for its valued clients. By supplying the people, knowledge and technology necessary to administer these programs, we can custom design programs that complement our clients' daily operations. In addition to providing marketing services, enrollment and certificate issue processing, toll free customer service and complete claims processing, we also handle legal compliance and provide clients with detailed progress reports on their program's growth.
>
> CSI is committed to maximizing customer participation, which drives the success of our insurance programs. Every client account is assigned an account executive who is held responsible for producing outstanding results. Our account executives are very experienced in the design, implementation and ongoing coordination of our programs. Each works closely with both our clients and marketing staff to develop cost effective marketing strategies.
>
> CSI has a marketing staff consisting of analysts and researchers, copywriters and a graphic designer, as well as an outbound telemarketing unit. The Market Research unit has developed an in-depth knowledge base of customer characteristics, which is integrated with our geo-demographic profiling system to enable us to direct our targeted marketing efforts.

www.csi-omaha.com/product.htm; www.csi-omaha.com/sales.htm.

13. On information and belief, CSI PROCESSING is a wholly owned subsidiary and agent of CSI that provides CSI Payment Protection administration and services to CSI's clients (i.e. credit card issuers) and their customers (i.e. credit card account holders and guarantors).

14. On information and belief, BOA has a joint venture type of business relationship with CSI and CSI PROCESSING whereby Payment Protection is marketed and sold by CSI, CSI PROCESSING, and/or third-party telemarketer defendants (sued herein as DOES) to BOA

credit card account holders and guarantors, using demographic information supplied by BOA, and the resulting profits are shared between them.

## **OPERATIVE FACTS**

15.   Plaintiff is an elderly gentlemen who has hearing difficulties and other limitations associated with old age and infirmity.

16.   As of the Summer of 2007, plaintiff was 68 years old and supported himself solely through his Social security benefits of approximately $1200 per month, which are and were at all relevant times directly deposited into his BOA checking account.

17.   As of the Summer of 2007, plaintiff was the guarantor of a BOA credit card account (the "subject account") on which he owed approximately $13,500, which he had borrowed for personal and household expenses. At all relevant times, plaintiff was making regular, timely payments of principal and interest at a marginal annual percentage rate (APR) of approximately 25%.

18.   Plaintiff alleges that, through its banking relationship with him, BOA developed and maintains a substantial record of information about him, including demographic information, for the purpose of profiting from the marketing and sale of goods and services to him, directly or through partnership or joint venture arrangements, including with CSI.

19.   In or about July of 2007, at his home in San Francisco, plaintiff began receiving telemarketing calls from defendants.

20.   Defendants made an audio record of one call (the "subject call"), which is transcribed as follows:

> TELEMARKETER: David Keck please.
> KECK: Speaking.
>
> TELEMARKETER: Mr. Keck good morning sir, my name (incomprehensible) sir. I'm calling on behalf of Bank of America regarding your Bank of America business credit card sir that you have with us. Now Mr. Keck I just want to offer a new optional service here today, it's called the business card security. Now if–
> KECK: Someone called me about that yesterday.
> TELEMARKETER: –Okay, well sir just want to get the materials out to you today sir for 30 days to review in the privacy of your own

| | |
|---|---|
| | business. Is that okay? |
| KECK: | Yes. |
| TELEMARKETER: | Great sir, now in order to get that out to you today, Mr. Keck, I do have to start the enrollment process today, sir, but you do have 30 days in order to make that decision. Is that okay? |
| KECK: | Yes. |
| TELEMARKETER: | Great. Now to complete your enrollment sir, with your permission, for quality assurance purposes, I'd like to tape record the confirmation of your coverage and enrollment, is that okay? |
| KECK: | Yes. |
| TELEMARKETER: | Thank you... (incomprehensible) ...I am now taping your enrollment. I show your name as David Keck. Mr. Keck I show you mailing address as 452 Duboce Avenue, Apartment number 210, is that correct? |
| KECK: | Yes. |
| TELEMARKETER: | Thank you. I'd also like to confirm I'm speaking with the guarantor of a business credit card with the Bank of America, is that correct? |
| KECK: | Pardon me? |
| TELEMARKETER: | I said I would also like to confirm I'm speaking with a guarantor of the business credit card with the Bank of America, is that correct? |
| KECK: | Yes, I have a - I have a credit card. |
| TELEMARKETER: | Are you the guarantor sir on that credit Bank of America business credit card? |
| KECK: | Yes. |
| TELEMARKETER: | Okay, thank you. Now to verify approval (sic) activate this feature for you, you understand this (sic) on a monthly fee of eighty five cents for one hundred dollars a month, your outstanding bill (sic) will be billed to your Bank of America business card account, I need to verify your city of birth sir. What city were you born in Mr. Keck? |
| KECK: | San Diego. |
| TELEMARKETER: | Okay........ Now, Mr. Keck I will process your enrollment.... |

(A short final section of the call is essentially incomprehensible and cannot be accurately transcribed.)

21. As a result of plaintiff's purported purchase of CSI Payment Protection via the subject call, starting on or about August 13, 2007, defendants began charging the subject account a monthly sum equal to a percentage of his outstanding BOA credit card balance.

22. Specifically, for Payment Protection, defendants charged, and plaintiff paid,

1  $111.74 on or about August 13, 2007; $112.50 on or about September 13, 2007; and $110.34 on or about October 12, 2007.  As he was (necessarily) carrying a balance, plaintiff was also charged, and paid, for interest on these amounts.

23.   On or shortly after October 12, 2007, plaintiff first noticed these unauthorized charges to his credit card account and began attempting to reverse them.  His efforts were hampered by defendants' practices of referring him to each other as the party responsible for the charge.  When plaintiff attempted to resolve the situation through BOA customer service, he was told that he would have to "contact the vendor".  However, when he sought to reverse the charges through CSI PROCESSING, he was informed they were BOA fees.  The line item on plaintiff's bills refers to an non-branded 800 vendor telephone number (not BOA).

24.   On or about November 12, 2007, in response to plaintiff's complaints, instead of reversing the charges, defendants sent him a letter on BOA letterhead signed by CSI PROCESSING that provided him access to the audio recording of the subject call, which the letter described as "confirmation of his enrollment".

25.    Plaintiff denies that he ever agreed to purchase Payment Protection, or that the audio recording represents confirmation of the same.

26.   Plaintiff alleges on information and belief that the eligibility requirements, conditions, and exclusions associated with the Payment Protection meant that its potential benefits were of little, if any, value to him based on his preexisting condition as a single, unemployed, senior citizen on Social Security.

27.   Plaintiff alleges on information and belief that defendants used demographic information and profiling to target him and similarly situated elders based on their statistical vulnerability to telemarketing sales efforts notwithstanding that the Payment Protection is particularly unsuitable for them.  He further alleges that defendants knew and should have known of the general unsuitability of the Payment Protection product for most elders.

28.   Plaintiff alleges on information and belief that defendants targeted him and similarly situated elders for repeated solicitations of  the same offer based on their indicia of susceptibility to telemarketing adduced in prior telephonic solicitations.

## LEGAL FRAMEWORK

### Telemarketing and Consumer Fraud and Abuse Prevention Act

29. CSI, CSI PROCESSING, and the telemarketer defendants (sued herein as DOES) are subject to the Telemarketing and Consumer Fraud and Abuse Prevention Act at 15 U.S.C. § 6101 *et seq* (the "TCFAPA"), and the Telemarketing Sales Rules implemented thereunder at 16 C.F.R. § 310.1 *et seq* (the "TSR").

30. The TCFAPA and TSR apply generally and specifically to require telemarketers to present truthful, clear, and conspicuous information regarding the nature and cost of the goods or services offered, while also prohibiting false or misleading statements. 15 U.S.C. § 6102(a)(3)(C); 16 C.F.R. § 310.3(a)(1) & (4); 16 C.F.R. § 310.4(d).

31. The TSR also provide specific safeguards designed to ensure the "express informed consent" of the customers, particularly where preacquired account information and free-to-pay conversion features are involved, as follows:

> (a) It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:***
>
> (6) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer ... In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer … to be charged for the goods or services … and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the [following] requirements must be met to evidence express informed consent.
>
> > (i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:
> >
> > > (A) obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;
> > >
> > > (B) obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(6)(i)(A) of this section; and,
> > >
> > > (C) make and maintain an audio recording of the entire telemarketing transaction.

16 C.F.R. § 310.4(a).

**Bank Debt Cancellation Contracts and Debt Suspension Agreements**

32. BOA is a national bank governed by the National Bank Act (the "NBA"), and not subject to the TCFAPA or TSR. 12 U.S.C. 21 *et seq*.

33. Pursuant to NBA regulations, BOA is authorized to "enter into debt cancellation contracts and debt suspension agreements and charge a fee therefor".. 12 C.F.R. § 37.1(a). In so doing, however, it is subject to standards designed to ensure that it offers and implements such contracts and agreements subject to "appropriate consumer protections." 12 C.F.R. § 37.1(b).

34. The NBA regulatory scheme is designed to ensure that an "affirmative election to purchase" is made by customers *after* they receive information about the product. 12 C.F.R. § 37.7.

35. Under this standard, normally "the bank must obtain a customer's *written* affirmative election to purchase a contract and *written* acknowledgment of receipt of the disclosures" 12 C.F.R. § 37.7(a) (emphasis added). Telemarketing sales are allowed only as follows:

> If the sale of a contract occurs by telephone, the customer's affirmative election to purchase may be made orally, provided the bank:
>
> (1) Maintains sufficient documentation to show that the customer received the short form disclosures and then affirmatively elected to purchase the contract;
>
> (2) Mails the affirmative written election and written acknowledgment, together with the long form disclosures ... within 3 business days after the telephone solicitation, and maintains sufficient documentation to show it made reasonable efforts to obtain the documents from the customer; and [omitted]

12 C.F.R. § 37.7(b)

> The short form of disclosures ... must include the information described in appendix A ... that is appropriate to the product offered.[1]

---

[1] Appendix a to Part 37–Short Form Disclosures reads in relevant part: "Your purchase of [PRODUCT NAME] is optional. Whether or not you purchase [PRODUCT NAME] will not affect your application for credit or the terms of any existing credit agreement you have with the bank. *** You may cancel [PRODUCT NAME] within _____ days and receive a full refund. ***We will give you additional information before you are required to pay for [PRODUCT NAME]. [If applicable]: This information will include a copy of the contract containing the terms of [PRODUCT NAME].*** There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits

> The bank shall make the short form disclosures orally at the time the bank first solicits the purchase of a contract.
>
> The disclosures required by this section must be conspicuous, simple, direct, readily understandable, and designed to call attention to the nature and significance of the information provided.

12 C.F.R. § 37.6 (a)(c)&(d)

36. In any event, a "national bank may not engage in any practice or use any advertisement that could mislead or otherwise cause a reasonable person to reach an erroneous belief with respect to information that must be disclosed". 12 C.F.R. § 37.3(b).

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and all other persons in the following similarly situated class: ***all California resident BOA customers who were charged and paid for Payment Protection pursuant to telephone solicitations, including, but not limited to, the sub-class of such persons who were elders at the time of the alleged transaction (the "Class").*** Excluded from the Class are defendants, defendants' predecessors, affiliates, officers, directors, and employees, and all judges and justices assigned to hear any aspect of this litigation. Following class discovery, sub-classes will be set forth further identifying the sub-classes entitled to relief pursuant to each cause of action stated herein.

38. Plaintiff alleges that the subject call and other similar telemarketing sales efforts were undertaken by defendants and their agents pursuant to standardized sales scripts, techniques, and practices, based on uniform telemarketer training programs.

39. The number of similarly situated plaintiffs favors utilization of the class action mechanism in this case. The proposed Class is believed to be composed of tens of thousands of persons. Joinder of them in one action would be impractical. The simultaneous disposition of all their claims through a class action will benefit both the parties and the Courts in terms of

---

under [PRODUCT NAME].*** [Either:] You should carefully read our additional information for a full explanation of the terms of [PRODUCT NAME] or You should carefully read the contract for a full explanation of the terms of [PRODUCT NAME]."

judicial economy.  It will also serve the interests of justice by avoiding the potential for inconsistent adjudication of the predominating questions of law and fact.

40. The identities of all the class members and the amount and periods of the charges involved are ascertainable through defendants' records.

41. There is a well-defined community of interest in issues of law and fact affecting the Class, and common issues predominate over ones affecting class members as individuals. The common issues of law and fact include, but are not limited to:

    (a) whether the defendants' subject telemarketing scripts and practices systematically result in unauthorized charges;

    (b) whether defendants target elderly persons for these telemarketing calls;

    (c) whether defendants' practices with respect to audio recording of the telemarketing calls comply with California state privacy law; and

    (d) whether defendants' conduct violates California law, and each of the cause of action alleged herein.

42. Plaintiff is asserting claims that are typical of the claims of the Classes he seeks to represent and is an adequate representatives of each Class because his interests are coincident with the interests of the class members.  Plaintiff can and will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class litigation.

43. Defendants continue to this day to engage in the unlawful and unfair conduct that is the subject of this complaint.  Absent a class action, defendants will retain millions of dollars already received by virtue of their unlawful and unfair practices and will continue wrongfully to collect and profit from such charges in the future.  Because of the size of the individual class members' claims, no class member could afford to seek legal redress on an individual basis. Absent a class action, the class members will continue to suffer losses, the illegal conduct described herein will continue without remedy, and defendants will profit by the retention of the proceeds of its misdeeds.

///

**FIRST CLAIM FOR RELIEF**

**(Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq*))**

44. Plaintiff incorporates the allegations of paragraphs 1 through 43 inclusive.

45. California Business & Professions Code sections 17200 *et seq* (the Unfair Competition Law - "UCL") define unfair competition as any "unlawful, unfair or fraudulent business act or practice". Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that, through their conduct alleged above, defendants violate each of these UCL prongs, as follows:

**Unlawful Prong**

46. As to the TCFAPA and TSR, defendants committed "unlawful" prong predicate violations by:

    (a) charging plaintiff for the Payment Protection despite the fact that plaintiff did not give his "express informed consent" to have defendants submit his billing information for payment (16 C.F.R. § 310.4(a)(6)); and

    (b) failing to provide truthful, clear, and conspicuous information regarding the nature and cost of the goods or services offered via telemarketing (15 U.S.C. § 6102(a)(3)(C), 16 C.F.R. § 310.3(a)(1) & (4), and 16 C.F.R. § 310.4(d)).

47. As to the NBA, defendants committed "unlawful prong" predicate violations by:

    (a) charging plaintiff for the Payment Protection despite the fact that plaintiff did not make an "affirmative election to purchase" it after having been provided the requisite short form oral disclosures (12 C.F.R. § 37.7(b));

    (b) failing to make "reasonable efforts to obtain the [affirmative written election and written acknowledgment [of] the long form disclosures] from the customer ... after the telephone solicitation" (12 C.F.R. § 37.7(b)(2)); and

    (c) engaging in "practice[s] .. that could mislead or otherwise cause a reasonable person to reach an erroneous belief with respect to information that must be disclosed" in connection with debt cancellation or suspension

1                        agreements (12 C.F.R. § 37.3(b)).

2        48.      Based on principles of *respondeat superior*, agency, and non-delegable duties, BOA is directly responsible for the aforementioned NBA regulatory violations perpetrated by their co-defendants in this case. Further, the fact that BOA's co-defendants were acting as agents and partners of BOA does not shield the co-defendants from the application of the TCFAPA and TSR as to them. *See Minnesota ex rel. Hatch v. Fleet Mortg. Corp.*, 181 F.Supp.2d 995 (D.Minn.,2001) (TSR apply to national bank subsidiaries). Moreover, although the TCFAPA and TSR do not apply directly to BOA, plaintiff asserts that BOA is indirectly jointly and severally responsible for the liabilities of its co-defendants resulting from violations of the TCFAPA and TSR based on principles of *respondeat superior* and agency.

       49.      Notwithstanding that the NBA entitles BOA to sell debt suspension agreements to its customers under certain conditions, plaintiff alleges that this is not an accurate interpretation of what occurred in this and similar cases, and thus questions of fact and law exist regarding what product was sold (credit card agreement term versus insurance versus other financial product), and by whom (BOA versus CSI versus CSI PROCESSING versus an unincorporated association comprised of these entities). The answer to these questions depends on the nature of the agreements, flow of revenues, and grants of authority among and between defendants, which are unknowable to plaintiff at this time. On information and belief, plaintiff alleges that the true factual and legal nature of the arrangement is akin to a joint venture to sell CSI Payment Protection insurance to BOA customers, and that the benefits BOA receives are referral fees for the provision of its customer information.

**Unfair Prong**

       50.      Defendants committed "unfair" prong predicate acts and practices because:

(a)      their conduct violates the legislatively declared policies of requiring meaningful consent (i.e. "express informed consent" and "affirmative election to purchase") in connection with telemarketing sales in general and of Payment Protection by banks in particular, as expressed in connection with the aforementioned regulations (*see also* 12 U.S.C. §

6101 (Congressional Findings));

(b) the practice of mass telemarketing Payment Protection without actually describing its nature, purpose, or benefits, and of selling it without actually seeking or obtaining a meaningful decision to purchase it, has no legitimate utility; and

(c) targeting elderly consumers for these practices based on their susceptibility despite that they are particularly unlikely to benefit from Payment Protection is particularly unfair.

51. Defendants committed and are committing "fraudulent" prong predicate acts and practices because the telemarketing script, as set forth in the subject call above, is designed to mislead and deceive, including as follows:

(a) In indicating that he has to "start the enrollment process", the telemarketer omits that he plans to trigger charges against plaintiff's account.

(b) In indicating that plaintiff will have 30 days to make a decision, the telemarketer omits that plaintiff's account will be charged if he fails to take affirmative action to prevent this from occurring.

(c) The telemarketer refers to the transaction as an "enrollment" and omits references to indicia of financial transactions and costs.

(d) The telemarketer buries a singular, obtuse reference to monetary charges in a prolonged and convoluted statement, and omits material facts regarding the transactional components of the subject call.

(e) The only information affirmatively supplied by plaintiff is the city of his birth, which is provided in response to a straightforward request for it, which the telemarketer sets up to be (and then deems to be) authorization to charge plaintiff for the Payment Protection.

52. Plaintiff and the Class have suffered injury in fact and lost money as a result.

53. Defendants' wrongful conduct impacts the public interest because, on information and belief, it is a pattern of illegal and predatory conduct that has been repeated on

thousands of occasions and continues to this day.

54.  Plaintiff, for himself and on behalf of others similarly situated, seeks to enjoin defendants' conduct and obtain restitution of all funds obtained by defendants by reason of and through the use of these practices.

55.  Plaintiff is entitled to an award of attorneys' fees, costs, and expenses pursuant to Code Civil Procedure section 1021.5.

WHEREFORE, plaintiff prays for judgment and relief as set forth below.

## SECOND CLAIM FOR RELIEF

**(Invasion of Privacy (Cal. Penal Code §§ 630 *et seq*))**

56.  Plaintiff incorporates the allegations of paragraphs 1 through 43 inclusive.

57.  The "Privacy Act is a coherent statutory scheme [that] protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation." *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 776; Penal Code § 632.

58.  Defendants violated and continue to violate the Privacy Act by engaging in a practice of covertly recording their telemarketing calls without first notifying or obtaining consent of the party being solicited, and making intentionally misleading statements to the contrary, as set forth above in the transcript of the subject call above.

59.  Plaintiff alleges on behalf of himself and persons similarly situated that the practice of recording these telemarketing calls without seeking the consent of the recipient is standardized and common to all such calls.

60.  Pursuant to Penal Code section 637.2 plaintiff and all persons similarly situated are entitled to statutory damages of $5000 per violation and defendants must be enjoined and restrained from engaging in such conduct.

WHEREFORE, plaintiff prays for judgment and relief as set forth below.

///
///
///

**THIRD CLAIM FOR RELIEF**

**(Consumer Legal Remedies Act (Cal. Civil Code §§ 1750 *et seq*))**

61. Plaintiff incorporates the allegations of paragraphs 1 through 52 inclusive.

62. The Payment Protection is a financial service covered by California's Consumer Legal Remedies Act (the "CLRA" – Cal. Civil Code §§1750 et seq).

63. The subject call and similar telemarketing efforts and sales by defendants were and are consumer transaction covered by the CLRA.

64. The CLRA must "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices". Cal. Civil Code § 1760.

65. Defendants telemarketing practices, as manifested in the subject call, constitute CLRA violations, as follows:

  (a) Defendants indicate that they are providing a sub-service of sending out materials to review without cost or obligation ("I just want to offer a new optional service here today ... just want to get the materials out to you today sir for 30 days to review" (see subject call transcript, supra), when, in fact, they are sending out said materials only after obtaining (or asserting they have obtained) an agreement to purchase Payment Protection. With respect to the sub-service of sending out free materials for review, this conduct constitutes violations of subsections 1770(a)(5) ("[r]epresenting that ... services have ... benefits ... which they do not have") and 1770(a)(7) ([r]epresenting that ... services are of a particular standard [or] quality ... if they are of another").

  (b) Defendants' statements like "I do have to start the enrollment process today, sir, but you do have 30 days in order to make that decision" constitute "misleading statements of fact concerning ... price reductions" in violation of subsection 1770(a)(13) because defendants imply that the customer will not be charged and omit that the customer will have to take

affirmative action to avoid being charged.

  (c) Insofar as the purported telephonic transactions do not satisfy the aforementioned TCFAPA, TSR, and NBA regulations, defendants' conduct violates subsection 1770(a)(14) because defendants are implicitly "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

  (d) Statements like "I'm calling on behalf of Bank of America regarding your Bank of America business credit card sir that you have with us ... I just want to offer a new optional service here today " are misleading insofar as, on information and belief (as set forth above), the telemarketer is only related to BOA in connection with a joint venture designed to sell an insurance (and/or insurance-like) financial product and share profits therefrom. Such statements, combined with the failure to disclose the nature of the financial product being offered or the relationships of the parties offering it, constitute violations of sections 1770(a)(2) ("[m]isrepresenting the source, sponsorship, [or] approval … of services"), section 1770(a)(5) ("[r]epresenting that ... services have sponsorship, approval, [or] characteristics ... which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have"), and 1770(a)(7) ([r]epresenting that ... services are of a particular standard [or] quality ... if they are of another"). If he had been provided with fair disclosure of the nature of the call and the caller, plaintiff alleges he would have been able to avoid the interaction that resulted in the purported transaction.

66. Plaintiff has provided defendants with notice of its violations and requested a cure. Defendants have failed to remedy the violations.

67. In doing the things alleged above, defendants have violated and, unless enjoined,

will continue to violate the CLRA as alleged in the notice.

68. As a proximate result of the CLRA violations, plaintiff and the class have been damaged in an amount to be proven at trial.

69. Plaintiff is entitled to an award of attorneys' fees, costs and expenses pursuant to section 1780(d) of the CLRA.

WHEREFORE, plaintiff prays for judgment and relief as set forth below.

## FOURTH CLAIM FOR RELIEF

**(Financial Elder Abuse  (Welf. & Inst. Code §§ 15600 *et seq*))**

70. Plaintiff incorporates the allegations of paragraphs 1 through 69 inclusive.

71. Plaintiff is and was at the time of the subject call an "elder" as that term is defined in the Elder Abuse and Dependent Adult Civil Protection Act, commencing at California Welfare & Institutions Code section 15600 (the "Elder Abuse Act").

72. Under the Elder Abuse Act, "financial abuse" of an elder occurs when a person or entity "[t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a *wrongful use* or with *intent to defraud*, or both" or assists in doing the same. Cal. Welf. & Inst. Code § 15610.30(a) (emphasis added).  A "wrongful use" is presumed "if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." Cal. Welf. & Inst. Code § 15610.30(b).

73. Plaintiff alleges that defendants took money from elders by targeting them for sharp and misleading telemarketing of Payment Protection, and did so despite knowing (and/or having constructive knowledge) that the Payment Protection offers little, if any, potential benefits to many elders.  In so doing, plaintiff alleges, defendants took the property of plaintiff and similarly situated elders in bad faith, to a wrongful use, and with intent to defraud within the meaning of the Elder Abuse Statute.

74. Plaintiff is entitled to attorneys fees and costs pursuant to section 15657.5 of the Elder Abuse Act.

75. Defendants are each guilty of oppression, fraud and malice within the meaning of

Cal. Civil Code section 3294. The acts and practices constituting oppression, fraud, and malice were authorized and established by an officer, director, and/or managing agent of each of the corporate defendants. Such persons were aware of the propensities of the third-party telemarketer defendants and their employees (sued herein as DOES), but utilized them anyway, and/or ratified their oppressive, fraudulent, and malicious conduct after the fact. Therefore, plaintiff and persons similarly situated, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendants.

WHEREFORE, plaintiff prays for judgment and relief as set forth below.

## 5TH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

76. Plaintiff incorporates the allegations of paragraphs 1 through 75 inclusive.

77. Defendants unjustly received and retained benefits at the expense of plaintiff and persons similarly situated, who are, therefore, entitled to restitution.

WHEREFORE, plaintiff prays for judgment and relief as set forth below.

## PRAYER FOR RELIEF

Plaintiff prays for relief and a judgment against defendants, as follows:

A. An order certifying the Plaintiff Class, appointing plaintiff DAVID KECK as representative of the Class, and appointing the law firm representing plaintiff as counsel for the Class;

B. Restitution of all monies acquired by defendants during the last four years as a result of its unlawful practices described above;

C. Imposition of a constructive trust upon all assets defendants have acquired from the Class as a result of their unlawful practices described above (Civil Code § 2224);

D. Economic damages according to proof;

E. Statutory damages of $1000 under the CLRA (Civil Code § 1780(a)(1)) and $5000 per privacy violation (Penal Code § 637.2);

1  F. Punitive damages according to proof;

2  G. The issuance of injunctive orders enjoining defendants from engaging in the
3  unlawful practices described above.

4  H. Payment of costs of suit herein incurred;

5  I. Pre and post judgment interest on amounts awarded;

6  J. Attorneys' fees, costs and expenses pursuant to Code of Civil Procedure section
7  1021.5, the CLRA, the Elder Abuse Act, and any other applicable authority; and

8  K. For such other and further relief as the Court may deem proper.

Respectfully submitted,

Dated: May 5, 2008                          BRAYTON PURCELL LLP


By: /s/ Peter Fredman

   Peter B. Fredman
   Attorneys for Plaintiff
   DAVID KECK

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 5, 2008                          BRAYTON PURCELL LLP


By: /s/ Peter Fredman

   Peter B. Fredman
   Attorneys for Plaintiff
   DAVID KECK