MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
JAN T. CHILTON (State Bar No. 47582)
jtc@severson.com
JOSHUA E. WHITEHAIR (State Bar No. 244900)
jew@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
Bank of America, N.A.

[Other Counsel Are Listed At End]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KECK, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, a Delaware Corporation; CENTRAL STATES INDEMNITY CO. OF OMAHA, a Nebraska Corporation; CSI PROCESSING, LLC, a Nebraska Company, and DOES 1 through 100,<br><br>Defendants. | Case No.: CV 08-1219 CRB<br><br>**CLASS ACTION**<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Case Management Conference<br>Date: June 6, 2008<br>Time: 8:30 a.m.<br>Courtroom: 8, 19th Floor |

The parties jointly submit this Case Management Statement and request the Court to adopt it as its Case Management Order in this case.

1. **Jurisdiction and Service**:

   **Basis of subject matter jurisdiction**: [Defendants' Statement:] This case was initially filed in state court and was removed to this Court by defendant Bank of America, N.A. ("BofA"). The Court has subject matter jurisdiction of the case under the Class Action Fairness Act (28 U.S.C. §1332(d)), and that removal was proper under 28 U.S.C. §§1441(a), 1453(b). The notice of removal was filed on February 29, 2008. No remand motion has been filed.

**Issues regarding personal jurisdiction or venue**: No issues regarding personal jurisdiction or venue are raised with regard to the existing defendants.

**Parties remaining to be served and proposed deadline for service**: [Plaintiff's statement:] BofA has informally identified "Telespectrum, Inc.," headquarted in King of Prussia, Pennsylvania as the Telemarketer DOE defendant. However, the Pennsylvania Secretary of State (online service) indicates that that entity dissolved in 2005, and no such entity is registered to do business in California. The relevant defendant may be The Resources Group (TRG). Assuming cooperation from defendants with respect to identifying the correct entity, plaintiffs anticipate that they will be able to accomplish service within the next 30 days. However, under the present circumstances, plaintiff requests that the setting of any deadline for such service be deferred until a Case Management Conference (CMC) to occur in 90-120 days.

2.   **Facts**: [Plaintiff's statement:] Plaintiff David Keck is an elderly and infirm gentleman who was the victim of a telemarketing sales call made "on behalf of" BofA. During the call he purportedly purchased a credit protection financial product that, in exchange for a monthly payment equal to 0.85% his outstanding monthly credit card balance, would pay the minimum payment on his BofA credit card in the event he became unable to under conditions such as disability, unemployment, or the like. Mr. Keck denies that he intended to or did purchase the subject service. When Mr. Keck complained about the unauthorized charges to his BofA credit card account, Defendants CSI Processing and/or BofA provided him with an audio recorded transcript of the call, which they contended verified the transaction. Defendants eventually credited plaintiff's account for the subject charges but not for the interest he incurred on those charges.

The transcript provides the core factual basis of plaintiff's claims herein, including unfair business practices and unauthorized recording of the call. The primary factual dispute is whether the transcript is representative of the telemarketing calls made "on behalf of" BofA to sell this and similar credit protection products. Other areas of actual dispute and/or inquiry include:

(a) how plaintiff and others are targeted for these telemarketing sales calls;

(b) the agency relationships between the defendant parties and the substantive nature of the subject transactions (e.g. is this truly a credit card feature sold by BofA, as defendants contend, or is it in fact some other form of financial service sold by the other defendants based on leads provided by BofA); and

(c) the distinction BofA draws between its "Business Card Security" product and parallel products (e.g. "Credit Card Security") sold to BofA credit card holders by these defendants, if any.

[Defendants' Statement:] Business Card Security ("BCS") is a debt cancellation plan that BofA offers to guarantors of its business credit card accounts. BCS modifies the standard terms of the business credit card agreement to provide that some or all of the account balance is cancelled if the guarantor becomes temporarily or totally disabled, or if he or she experiences identity theft or business interruption.

BofA offers BCS only in connection with business credit card accounts, not in connection with personal credit card accounts. BofA does not use age as a selection criterion for offering BCS to guarantors of business credit card accounts for small businesses.

BofA's business credit cards are governed by a business card agreement which states that "[t]he account is a business account and should be used for business purposes only." The agreement also provides that "[t]his Agreement and your Account shall be governed by and interpreted in accordance with Arizona law and the laws of the United States, regardless of where Company is located or where Cardholder uses the Account …" and that "[i]n no event shall Bank of America be liable for any consequential, special, indirect or punitive damages of any nature."

Under contract with BofA, Telespectrum, Inc., a telemarketing firm, calls guarantors of BofA business credit card accounts to offer them the BCS plan. Telespectrum's employees are directed to follow a BofA-prepared script in making these calls. The script calls for the telemarketer to state—immediately after the telemarketer has determined that the guarantor has answered and has introduced him- or her- self: "Mr./Ms. _____, this call may be monitored for training and evaluation purposes." The script then goes on to explain BCS' benefits and cost. If the guarantor indicates an interest in obtaining BCS, the script then calls for the telemarketer to

record a confirmation of enrolment during which the guarantor is to be asked to verify his or her enrolment by stating his or her city of birth or mother's maiden name. The script closes by informing the guarantor that he or she may cancel BCS during the first 30 days and all BCS charges will be refunded to the account.

Under contract with BofA, CSI Processing, LLC is the third party Plan Administrator for BofA's BCS plan. After the telemarketer has enrolled a guarantor, CSI Processing sends the guarantor a fulfillment package which contains a certificate of enrolment, an addendum to the business card agreement which sets forth the BCS provision, a summary of BCS' benefits and costs, answers to questions frequently asked about BCS, and a written acknowledgment form which the guarantor is asked to sign and return (in a stamped envelope sent with the fulfillment package), acknowledging enrolment in BCS and receipt of the fulfillment package. Under its contract with BofA, CSI Processing also handles claims for benefits under BCS and some types of customer inquiries or complaints about that provision. Central States Indemnity Co. of Omaha owns CSI Processing but otherwise has no involvement with BCS.

One of Telespectrum's employees called plaintiff David Keck in July 2007 to solicit his enrolment in BCS. The call was recorded and has been transcribed in paragraph 20 of the second amended complaint. Based on the call, Telespectrum believed Keck had enrolled in BCS. In accordance with its normal procedures, CSI Processing sent Keck a fulfillment package after receiving notice from Telespectrum of Keck's enrolment.

Several months later Keck decided he was dissatisfied with BCS and claimed he had never agreed to enroll. Keck's BCS enrollment was cancelled on October 20, 2007 when he called the Plan administrator, CSI Processing, to cancel. In response to his informal complaint, on December 11, 2007, BofA refunded to the account Keck had guaranteed the $334.58 in BCS charges which had been assessed to the account to the date of cancellation.

3.    **Legal Issues**: [Plaintiff's Statement:] This case presents numerous interesting legal questions as set forth by defendants below. With respect to the "unlawful" prong of plaintiff's UCL claim, a prominent question is what regulatory scheme (OCC versus FTC) applies to which defendants with respect to the telemarketing of the credit protection product? Put another way,

- 4 -

are telemarketing sub-contractors of National Banks immune from compliance with Federal Trade Commission (FTC) regulations like the Telemarketing Sales Rules by virtue of the fact that their principal is not subject to the FTC under the National Banking Act? *See Minnesota ex rel. Hatch v. Fleet Mortg. Corp.*, 181 F.Supp.2d 995 (D.Minn. 2001) (FTC Telemarketing Sales Rules apply to national bank subsidiaries). This question, in turn, presents questions of *respondeat superior* liability: is a principal liable under the *respondeat superior* doctrine for liabilities of its agents based on violations of regulations which do not apply directly to the principal?

[Defendants' Statement:]

a. Do 15 U.S.C. §§6101, 6102; 16 C.F.R. §§310.1, 310.3, 310.4; and/or 12 C.F.R. §§37.1, 37.3, 37.6, 37.7 apply to offering BCS in connection with a business credit card account?

b. If those statutes and regulations apply, did defendants substantially comply with them?

c. Can one defendant be held liable under the UCL (Cal. Bus. & Prof. Code §17200) for acts or practices of another defendant pursuant to theories of respondeat superior, agency or non-delegable duties?

d. Did BofA engage in any unfair or deceptive practice in connection with offering BCS?

e. Were telemarketing calls regarding BCS to California residents "confidential communications" within the meaning of Penal Code §632?

f. Did Keck and other guarantors consent to the recording of telemarketing calls to them?

g. Does the Consumers Legal Remedies Act ("CLRA"; Civ. Code, §1770) apply to credit transactions such as credit cards and agreements to cancel credit card debt?

h. Does the CLRA apply to BCS offered in connection with business credit cards?

i. Did BofA violate any of the subdivisions of Civil Code section 1770(a) in offering BCS to California residents?

  j.  Did BofA commit financial abuse of an elder within the meaning of Welfare & Institutions Code, §15610.3 in connection with offering BCS?

  k.  Do any of the foregoing California statutes apply to the offer of BCS in connection with a business credit account which is governed by an agreement choosing Arizona law?

  l.  Have defendants been unjustly enriched?

  m.  Can plaintiff Keck satisfy Rule 23(a) and a subsection of 23(b) so as to obtain class certification?

4. **Motions**:

  **Prior motion**: BofA moved to dismiss the first amended complaint. On April 15, 2008, the Court granted the motion, in part, with 20 days' leave to amend. Keck filed a second amended complaint on May 5, 2008.

  **Anticipated motions**: Plaintiffs will move to certify a class as described in item 9 below. After resolution of the class certification motion, defendants anticipate that they will move for summary judgment on one or more of plaintiffs' claims.

5. **Amendment of Pleadings**: [Plaintiff's Statement:] Before moving for class certification, plaintiff may seek to amend the complaint in order to narrow the issues in accordance with evidence obtained in discovery. See paragraph 15. Plaintiff requests 180 days to complete initial discovery and amend the complaint, as appropriate.

6. **Evidence Preservation**: [Plaintiff's Statement:] Plaintiff has preserved evidence in his possession.

  [Defendant BofA's Statement:] BofA has implemented what it believes are steps appropriately designed to preserve evidence relevant to issues reasonably evident in this action, including stopping document-destruction programs and erasures of e-documents, including e-mail. A copy of the directive BofA's legal staff sent to appropriate BofA employees directing retention of relevant records is attached as Exhibit A.

  [Statement of Defendants CSI and CSI Processing:] CSI and CSI Processing have taken appropriate steps designed to preserve evidence relevant to the issues raised in this action which

include stopping document destruction programs as they may relate to documents relevant to the issues raised in this action.

7. **Disclosures**: The parties intend to fully comply with FRCivP 26(a) on or before May 30, 2008, the deadline set by the Court's Order Setting Initial Case Management Conference.

8. **Discovery**: [Plaintiff's Statement:] Plaintiff has not taken any discovery to date. Plaintiff proposes that an initial discovery period focus on defendants' position that the subject telemarketing call is not representative of similar calls made on behalf of BofA (e.g. that the transcript reflects the conduct of a rogue telemarketer) because this is a primary question affecting both class certification and ADR. See ¶15 below.

[Defendants' Statement:] Defendants intend to take plaintiff Keck's deposition and to request production of all his relevant documents within the next 60 days. Defendants may, thereafter, serve contention interrogatories.

9. **Class Actions**: Plaintiff Keck's Civil L.R. 16-9(b) statement is attached as Exhibit B. Defendants do not join or otherwise adopt any statements or representations made in plaintiff's Civil L.R. 16-9(b) statement.

10. **Related Cases**: None.

11. **Relief**: [Plaintiff's Statement:] Plaintiff seeks restitution of credit protection fees and resulting interest charges based on his claim that defendants' subject telemarketing sales practices do not result in a valid transaction. As defendants have credited plaintiff $334 in credit protection charges back to his account, the balance due to him is approximately $12. Plaintiffs seeks statutory damages of $5000 for unauthorized recording of the telemarketing call. Penal Code § 637.2. Plaintiff also seeks punitive damages based on the Elder Abuse statute. The size and scope of the class is unknown, thus class-wide relief cannot be calculated pending discovery. See ¶15.

12. **Settlement and ADR**: The parties have stipulated to, and the Court has ordered, a one-day mediation to be completed before the filing of the motion for class certification before a JAMS mediator to be determined. [Plaintiffs' Statement:] In order to conduct a meaningful early ADR, plaintiffs need to conduct factual discovery to assess the validity and strength of

- 7 -

defendants' position that the subject telemarketing call was not representative of other similar calls made on BofA's behalf. See paragraph 15.

13. **Consent to Magistrate Judge for all Purposes**: Defendants do not consent to having a magistrate judge conduct further proceedings. Plaintiff Keck would consent.

14. **Other References**: No.

15. **Narrowing of Issues**: [Plaintiffs' Statement:] Plaintiff believes that the issues can potentially be narrowed substantially through formal and informal factual discovery regarding the validity and strength of defendants' position that the subject call is not representative of similar telemarketing calls made on behalf of BofA. For example, it has been suggested that the practices depicted in the subject transcript represent the unilateral practices of a single telemarketing agent, which, to the extent true, would limit the scope of this case significantly, and present the possibility for a quick resolution.

16. **Expedited Schedule**: The parties do not believe this case is appropriate for handling on an expedited basis particularly given the class action allegations.

17. **Scheduling**: [Plaintiffs' Statement:] Plaintiff proposes that the setting of a scheduling order be deferred to a continued CMC to occur in 90-120 days in order to allow time to conduct discovery, narrow the issues as applicable, and determine the appropriate scheduling order based thereon.

[Defendants' Statement:] Defendants propose the following case schedule:

| Event | Proposed Date |
|---|---|
| Hearing on Class Certification Motion | October 3, 2008 |
| Exchange of Expert Disclosures | December 5, 2008 |
| Exchange of Rebuttal Expert Disclosures | January 16, 2009 |
| Completion of Discovery | February 13, 2009 |
| Deadline for filing Dispositive Motions | March 6, 2009 |
| Hearing on Dispositive Motions | April 16, 2009 |
| Pretrial Conference | June 5, 2009 |
| Trial | June 29, 2009 |

- 8 -

18. **Trial**: The parties estimate that trial will last 15 days if a class is certified and all claims currently pled are tried to a jury and the court, as dictated by their legal or equitable character. Some of the issues in this case are legal and triable to a jury; e.g., the CLRA claim. Others are equitable and triable to the court; e.g., the UCL claim. Plaintiff demanded a jury in his complaints. Defendants BofA, CSI and CSI Processing now join plaintiff in demanding a jury.

19. **Disclosure of Non-Party Interested Entities or Persons**:

[Defendant BofA's Statement:] BofA filed a certificate on February 29, 2008. That certificate states: "Bank of America, N.A. is a wholly owned by NB Holdings Corporation, which is wholly owned by Bank of America Corporation, a publicly traded corporation. Bank of America Corporation common stock is listed on the New York Stock Exchange and the Pacific Stock Exchange under the symbol BAC. No individual or entity owns 10% or more of the outstanding shares of Bank of America Corporation."

[Statement of Defendants CSI and CSI Processing:] CSI and CSI Processing filed their Certificate on May 30, 2008.

20. **Other Matters**: The parties are unaware of such other matters at this time.

DATED: May 30, 2008

BRAYTON PURCELL LLP

By: _____/s/_____
    Peter B. Fredman

Attorneys for Plaintiff David Keck

SEVERSON & WERSON
A Professional Corporation

By: _____/s/_____
    Jan T. Chilton

Attorneys for Defendant Bank of America, N.A.

TOBIN & TOBIN

By: _____/s/_____
    Paul E. Gaspari

Attorneys for Defendants Central States Indemnity Co. of Omaha and CSI Processing LLC

Additional Attorneys:

Peter B. Fredman
BRAYTON PURCELL LLC
222 Rush Landing Road
Novato, CA 94948
Tel: 415-895-1555 x364
Fax: 415-898-1247

Attorneys for Plaintiff David Keck

Paul Edward Gaspari
TOBIN & TOBIN
500 Sansome Street
Eighth Floor
San Francisco, CA 94111-3214
Tel: 415-433-1400
Fax: 415-433-3883

Attorneys for Defendants Central States Indemnity Co. of Omaha and CSI Processing LLC

# EXHIBIT A

URGENT PRESERVATION NOTICE

**Attorney Client Communication ~ Privileged & Confidential**

**Attorney Work Product**

TO: Attached Distribution List

FROM: [redacted] Assistant General Counsel

DATE: March 20, 2008

RE: Notice of Document Preservation Obligations

        David Keck v. Bank of America, Central States Indemnity Co. of Omaha, CSI Processing LLC and DOES 1-100

This letter concerns your obligation to identify and preserve paper and electronic documents relevant to a purported class action lawsuit that David Keck filed against Bank of America, N.A. (the "Litigation"). The Litigation is currently pending in the United States District Court for the Northern District of California as *Keck v. Bank of America*, no. 3:08-cv-01219-CRB.

In the Litigation, Keck, a small business credit card guarantor, alleges that he was charged for a debt cancellation service called Business Card Security ("BCS") even though he never agreed to buy that service. Keck claims that Bank of America's telemarketing scripts and techniques used in promoting the BCS service are deceptive and are targeted particularly at senior citizens. Keck also claims Bank of America failed to explain adequately and truthfully the relationship between the bank and CSI Processing, LLC, the administrator of the BCS service.

Keck also claims that BofA's telemarketer unlawfully recorded the telemarketing phone call without his consent. Keck claims to represent a class of all California Bank of America customers (not just small business credit card guarantors) who were charged and paid for debt cancellation or suspension services based on telemarketing solicitations.

CSI Processing, LLC is named as a co-defendant in the suit. Bank of America's telemarketer, Telespectrum, Inc., has not yet been sued.

All Bank Associates have a duty to identify and preserve paper and electronic documents that are relevant to the subject of the Litigation. Therefore, it is critical that all Associates who worked on related transactions, or with knowledge of the subject of the Litigation, **preserve and do not discard, destroy or delete any paper files, electronic files, e-mails, or other documents (including drafts), in whatever form relevant to the Litigation.** Information gathered so far suggests that you may have knowledge of, or materials related to, the subject of the Litigation. If that is the case, you are required to take appropriate steps immediately to identify and preserve copies of relevant documents and information.

Examples of documents that should be preserved as potentially relevant to the Litigation include:

- Telemarketing scripts, policies regarding recordation of telemarketing calls, or other marketing practices or procedures for BCS and any other debt cancellation or suspension service offered California customers.

Exhibit A, page 1

EXHIBIT A

- Documents or communications concerning actual or proposed terms, conditions, policies, practices, charges, or fees for BCS or any other debt cancellation or suspension service offered California customers.
- Contracts and communications between Bank of America and CSI Processing, LLC regarding BCS or any other debt cancellation or suspension service offered California customers.
- Contracts and communications between Bank of America and Telespectrum, Inc. regarding BCS or any other debt cancellation or suspension service offered California customers.
- Transcripts or recordings of any telemarketing calls regarding BCS or any other debt cancellation or suspension service offered California customers.
- Records identifying California residents who were charged for, or to whom telemarketing calls were made regarding, BCS or any other debt cancellation or suspension service offered California customers.
- Records of account information (including fees charged and paid) on credit card accounts of David Keck and other California residents charged for BCS or any other debt cancellation or suspension service offered California customers.
- Communications to or from customers, regulators, or other third parties (including complaints and responses) about BCS, any other debt cancellation or suspension service offered California customers, or telemarketing practices in connection with those services.

This list is only meant to include examples of potentially relevant documents that should be preserved, and it is not meant to be exhaustive. If you are in doubt about whether a document is somehow related to the subject of the Litigation, you should preserve it until further notice or contact me immediately.

Definition of Documents

As used in this memorandum, the term "documents" is defined as broadly as possible to include all records, materials, and other tangible forms of expression however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfers, receipts, and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, datebooks, worksheets, contracts, agreements, bank statements, videotapes, audiotapes, and other permanent voice or image recordings (including voice mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media (including electronic mail), microfilm, microfiche, and other storage devices. The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original, such as copies that include handwritten notes.

Your Obligations Pursuant to this Notice

Exhibit A, page 2

(1) <u>Hard Copy Documents</u> – For the purpose of complying with this request, you are expected to search for and preserve potentially responsive documents/data in all places where such records could conceivably be maintained or stored, including both actives files and archives. A partial list of locations where data or documents may be stored appears below, by way of example and not of limitation. Other locations where data or documents may reside may be known to you and should also be searched for documents.

>business unit files
>
>personal files
>
>home or car files
>
>personal calendars or diaries
>
>onsite or offsite storage files, including warehoused or archived material

Please take appropriate steps to retrieve and review these files, and take action to prevent the automatic destruction of archived documents.

(2) <u>Electronically Stored Information</u> – Please do not concern yourself with the recovery and retrieval of e-mail or electronically stored documents, other than refraining from the deletion of those e-mails or documents. An in-house technology team from Information Security Business Continuity Group ("ISBC") will handle the recovery of all related electronic documents and will contact you directly. Your full cooperation is required to identify the location of potentially responsive materials and to provide access to your business or personal electronic equipment to allow the prompt collection of electronic data by this team.

**PLEASE NOTE** that the standard Electronic Mail Retention Policy (applicable to most Associates who do not have a special regulated status) results in the automatic deletion from Inboxes and Sent Mail of each Associate's e-mail older than 90 days. It is your continuing responsibility to archive any e-mail relating to this matter residing directly in your inbox or sent mail folder related to the Litigation to your hard drive, network drive, shared drive, CD ROM, DVD or any other equivalent storage device or media until further notice. The easiest way to archive such e-mail is to create a personal electronic folder called "the Eaves Litigation" and to move all existing related e-mails from you Inbox or Sent Mail folder to the new folder. If you need assistance with archiving e-mails in your inbox or sent mail, please see below for contact information.

Additional Instructions

Please do not discuss this matter with anyone other than your management, the Legal Department or those whom you must inform so as to insure no potentially responsive documents are destroyed or discarded.

Please review the attached list of current and former Associates believed to have knowledge of the Litigation. If there are Associates not listed that you believe have knowledge of the subject matter of the Litigation, please contact Mena Woodall at (704) 386-2455 in the Legal Department immediately so that we can add them to our list.

You are not required or expected to make "legal conclusions" about the relevance of any document. If you are in doubt about whether a document is somehow related to the subject of the Litigation, you should preserve it until further notice.

Although we understand and appreciate that these document retention obligations may be burdensome, the Bank takes these matters seriously and compliance with this directive is mandatory.

If you have any questions or need clarification, please contact Mena Woodall at (704) 386-2455. She will address or redirect your call as necessary.

Thank you for your cooperation.

[redacted]

Assistant General Counsel

[redacted]

Exhibit A, page 4

# EXHIBIT B

## EXHIBIT B TO JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Plaintiff's L.R. 16(b) Statement

1. Plaintiff's current proposed class definition is: all California resident Bank of America customers who were charged and paid for credit protection services pursuant to telephone solicitations, including, but not limited to, the sub-class of such persons who were elders at the time of the alleged transaction (the "Class"). This definition is based on the allegations that the subject transcript (a) represents a standardized sales script (or comparable broad business practice) and (b) does not establish valid (i) authorization to charge class members accounts for the credit protection product or (ii) consent to record the conversation. The proposed class definition may change depending on the outcome of discovery regarding the validity, extent, and strength of defendants' position that the subject transcript is not representative of their general business practices. For example, if the subject transcript represents the practices of a single "rogue" telemarketer, the class definition would be limited to persons who were sold the product by said telemarketer.

2. Plaintiff intends to file a motion for class certification under Federal Rules of Civil Procedure 23(b)(2) (injunctive relief appropriate) and/or 23(b)(3) (common questions).

3. Plaintiff alleges, and it appears, that the subject call and other similar telemarketing sales efforts were undertaken through mass marketing pursuant to standardized sales scripts, techniques, and practices, and based on uniform telemarketer training programs. The proposed class is thus presumed to be composed of thousands of persons. This number of similarly situated victims of these practices favors utilization of the class

EXHIBIT
B

action mechanism because joinder of them in one action would be impractical. The identities of all the class members and the amount and periods of the charges involved are ascertainable through defendants' records. The common issues of law and fact include, but are not limited to: (a) whether the defendants' subject telemarketing scripts and practices systematically result in unauthorized charges; (b) whether defendants target elderly persons for these telemarketing calls; (c) whether defendants' practices with respect to audio recording of the telemarketing calls comply with California state privacy law; and (d) whether defendants' conduct violates California law, and each of the cause of action alleged.

4. Plaintiff requests deferring the setting of a class certification schedule until a future CMC to occur in 90-120 days in order to allow for some discovery to take place, particularly with respect to defendants' position that the practices depicted in the subject transcript are not representative of defendants' telemarketing business practices in general. Also, per the parties' stipulation and the Court's order, ADR must be completed before the filing of the class certification motion. Effective ADR cannot be achieved without some of this discovery.