

Jan T. Chilton
Attorney at Law
Direct Line: (415) 677-5603
jtc@severson.com

One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

June 16, 2008

Hon. Charles R. Breyer
United States District Court,
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102-3483

Re:   *David Keck v. Bank of America*, et al., no. C-08-01219 CRB

Dear Judge Breyer:

At the initial case management conference held on June 6, 2008, the Court requested that Bank of America file a letter stating its position regarding the one-way intervention rule which I raised at the conference.  This letter responds to that request.

**The One-Way Intervention Rule**

As the United States Supreme Court explained in *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 545-549 (1974), Fed. R. Civ. P. 23, as it stood before it was rewritten in 1966 allowed members of so-called "spurious" class actions to await a decision on the merits before deciding whether to join the suit or not.  Needless to say, they joined if the merits had been determined in the class' favor and did not if the class opponent (normally, the defendant) had prevailed.[1]

---

[1] "Under Rule 23 as it stood prior to its extensive amendment in 1966, 383 U.S. 1047-1050, a so-called 'spurious' class action could be maintained when 'the character of the right sought to be enforced for or against the class is . . . several, and there is a common question of law or fact affecting the several rights and a common relief is sought.' The Rule, however, contained no mechanism for determining at any point in advance of final judgment which of those potential members of the class claimed in the complaint were actual members and would be bound by the judgment. Rather, '(w)hen a suit was brought by or against such a class, it was merely an invitation to joinder ….'  A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment." *American Pipe*, 414 U.S. at 545-47 (fn. & citations omitted).

Severson
&Werson
A Professional Corporation

Hon. Charles R. Breyer
United States District Court
Northern District of California
June 16, 2008
Page 2

"Spurious" class members' ability to intervene after they knew the outcome was dubbed "one-way intervention," and it was a harshly criticized feature of pre-1966 class action practice.[2]

"The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments." *American Pipe*, 414 U.S. at 457 (fn. omitted).

The 1966 amendments achieved this end by requiring that the court reach a decision "as soon as practicable"[3] on class certification, and if a class was certified under Rule 23(b)(3),[4] send notice to the class, giving its putative members a limited time within which to opt out or be bound by the judgment. Fed. R. Civ. P. 23(c)(1)(A), (2)(B), (3)(B); *American Pipe*, 414 U.S. at 457-58; *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995).

"Thus, potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement' of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse." *American Pipe*, 414 U.S. at 459.

If a district court now proceeds, over a class opponent's objection, to decide the merits before class certification is resolved and class members have been given their opportunity to opt out, a harsh consequence follows: the class can no longer be certified. The Seventh Circuit so held 30 years ago,[5] and no other court has disagreed since.

---

[2] "This situation-the potential for so-called 'one-way intervention'-aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *American Pipe*, 414 U.S. at 547 (fn. omitted); *see also Premier Elec. Constr. Co. v. N.E.C.A., Inc.*, 814 F.2d 358, 362-63 (7th Cir. 1987).

[3] In 2003, the rule was amended to substitute the words "[a]t an early practicable time" for "as soon as practicable" because experience had shown that time might be needed to gather information necessary to make the certification decision. *See* 2003 Advisory Committee Note to Subdivision (c)(1). The advisory committee note expressly states that this change does "not restore the practice of 'one-way intervention' that was rejected by the 1966 revision of Rule 23."

[4] Classes certified under post-1966 Rule 23(b)(3) are the rough equivalent of what previously were "spurious" classes under pre-1966 Rule 23.

[5] "Inasmuch as the plaintiffs here did not seek certification, and in fact affirmatively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case. Accordingly, this cause is remanded with instruction to vacate the order of

(Fn. cont'd)



Hon. Charles R. Breyer
United States District Court
Northern District of California
June 16, 2008
Page 3

Since Rule 23 bans one-way intervention to protect the class opponent against procedural unfairness, that party may, if it wishes, waive the ban and seek a merits determination before class certification. *Schwarzschild*, 69 F.3d at 297; *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1382 (D.C. Cir.1980); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759-60 (3d Cir.1974) (en banc). But if the class opponent does so, it cannot win a judgment against putative class members, who remain free to sue it again on the same claim, even if the class opponent prevails against the individual named plaintiff. *Schwarzschild*, 69 F.3d at 297.

### BofA Does *Not* Waive Its Protection Against One-Way Intervention

While BofA strongly supports the Court's attempt to dispose of this litigation as inexpensively and expeditiously as possible, it does not believe that the goal will be served by attempting to resolve the merits issues first in this case. For that reason, after careful consideration, BofA has decided not to waive its Rule 23 protection against one-way intervention.

BofA believes that it can establish relatively simply that this case is not suitable for class certification as the named plaintiff, David Keck, is atypical of the class he seeks to represent. *See* Fed. R. Civ. P. 23(a)(3). The telemarketing call made to Keck did not follow BofA's approved script in many significant respects. That fact is easily determined by comparing the text of the Keck call transcribed in his complaint with BofA's approved script. BofA believes it will be equally easy for it to prove that most other telemarketing calls followed its approved script. Thus, the class certification determination will be straightforward. If certification is denied, the case will, doubtless, be quickly resolved as Keck's claimed damages do not justify extensive litigation.[6] If Keck appealed from a judgment claiming error in the denial of class certification, his appeal would be reviewed under the relatively lax abuse of discretion standard.[7]

By contrast, to fully dispose of Keck's claims on the merits will require the Court to decide a substantial variety of issues. Some of those issues appear ill-suited to summary disposition, particularly on a class-wide basis; e.g., whether BofA made "reasonable efforts" to obtain customer's signed acknowledgements of enrollment in the Business Card Security ("BCS") program and receipt of long-form disclosures regarding it (*see* 2d Amended Compl., ¶47(b), *citing*

---

(Fn. cont'd)
certification of the class and to proceed with the individual claims of the named plaintiffs." *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354-55 (7th Cir. 1975); *accord: Kerkhoff v. MCI Worldcom, Inc.,* 282 F.3d 44, 54-55 (1st Cir. 2002); *Washington v. Finlay*, 664 F.2d 913, 928-29 (4th Cir. 1981); *see also Fireside Bank v. Superior Court,* 40 Cal.4th 1069, 1087-88 (2007); *State v. Doody,* 556 N.E.2d 1357, 1362 (Ind. Ct. App. 1990).

[6]     At the case management conference, Keck's counsel suggested that Keck's actual damages total about $12.

[7]     See *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003); *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) (decision is subject to a "very limited" review).



Hon. Charles R. Breyer  
United States District Court  
Northern District of California  
June 16, 2008  
Page 4

12 C.F.R. §37.6(b)) and whether some aspect of the marketing or substance of the BCS program is "unfair" (*see* 2d Amended Compl., ¶50; *Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007)).

      While other issues are better suited to summary adjudication, Keck's claims do not appear to stand or fall on the resolution of any single legal issue or even on a few such issues. Instead, to dispose of the case or even substantially narrow it, the Court would need to adjudicate a considerable array of issues. As to many of those issues—e.g., the meaning of the portion of the Telemarketing Sales Rule Keck claims defendants violated (*see* 2d Amended Compl., ¶31), whether it applies to telemarketers for national banks, and if so, whether, or under what circumstances, a national bank bears liability for a telemarketer's violation of the rule—there is little or no existing judicial authority. As a result, these issues will be more difficult for this Court to resolve, and whatever this Court decides, an appeal is more likely as the Ninth Circuit will likely review these issues de novo.

      In short, BofA believes that this case is best and most expeditiously handled under the ordinary procedure: class certification first, merits later. Accordingly, BofA does *not* waive its Rule 23 protection against one-way intervention, but objects to any determination of merits issues before the grant or denial of class certification.

                                     Respectfully yours,

                                     /s/ *Jan T. Chilton*

                                   Jan T. Chilton

cc: Peter B. Fredman, Esq.  
    Paul E. Gaspari, Esq.